IN THE SUPREME COURT OF NORTH CAROLINA

No. 474A19

Filed 20 November 2020

IN THE MATTER OF: N.M.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 28 August 2019 by Judge Robert J. Crumpton in District Court, Wilkes County. This matter was calendared for argument in the Supreme Court on 7 October 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson, for petitioner-appellee mother.*

*No brief for appellee Guardian ad Litem.*

*Mercedes O. Chut for respondent-appellant father.*

NEWBY, Justice.

Respondent appeals from the trial court's order terminating his parental rights to his minor child, N.M.H. (Nicole)[1], in this private termination action. We affirm.

Petitioner and respondent are the mother and father of Nicole, who was born in September 2010 while petitioner and respondent were married. Petitioner and respondent resided in Caldwell County for most of their marriage. Petitioner

---

[1] A pseudonym agreed to by the parties is used to protect the identity of the juvenile and for ease of reading.

admitted to abusing drugs during her marriage to respondent and accused respondent of the same, which he denied. Petitioner and respondent separated in 2012 when petitioner stopped using drugs and moved to Wilkes County with Nicole in order to provide a better life for herself and Nicole. Respondent helped care for Nicole while petitioner continued to work in Caldwell County for approximately one month after the parties separated, until petitioner got a job in Wilkes County. Petitioner and respondent divorced in 2014, and petitioner married her current husband in 2015.

From 2012 until July 2016, respondent had sporadic contact with petitioner through Facebook Messenger. During this four-year period, respondent visited the minor child approximately three or four times. Around 1 July 2016, petitioner agreed to let the minor child stay overnight at respondent's house. The next day, the child came home dirty and smelling like cigarette smoke, and the child stated that respondent had a smoke room in his house. At that point, petitioner contacted respondent via Facebook Messenger, and they got into an argument. Petitioner told respondent she would not bring the child back to him. From that point in 2016, respondent had no contact with petitioner until March 2019, after he was served with the petition in this matter. Similarly, respondent had no contact with the minor child from July 2016 on. Other than paying for a $160 dance class in 2016, respondent did not provide any financial support for the minor child from 2012 on, nor did he give the child any type of gift or tokens of affection at any point.

On 14 March 2019, petitioner filed a petition to terminate respondent's parental rights to Nicole on grounds of neglect and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1), (7) (2019). In support of the asserted grounds, petitioner alleged that respondent had abandoned Nicole, had not provided any financial support for Nicole, had not provided any care for Nicole, had not shown any ability and/or willingness to provide a safe and loving home for Nicole, and had shown a complete indifference to the welfare and well-being of Nicole.

The termination petition was heard on 23 August 2019, and the trial court entered an order terminating respondent's parental rights on 28 August 2019. The trial court determined that both grounds alleged in the termination petition to terminate respondent's parental rights existed and concluded that termination was in Nicole's best interests. Respondent appealed to this Court.

On appeal, respondent argues that the trial court erred by adjudicating grounds to terminate his parental rights to Nicole. "Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In re Z.A.M.*, 374 N.C. 88, 94, 839 S.E.2d 792, 796 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)).

> At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under subsection 7B-1111(a). N.C.G.S. § 7B-1109(f) (2019). . . . If the petitioner meets her burden during the adjudicatory stage, "the court proceeds to the dispositional stage, at which the court must consider whether it is in the best

interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110).

*In re B.C.B.*, 374 N.C. 32, 35, 839 S.E.2d 748, 751–52 (2020).

Respondent only challenges the trial court's determination that grounds existed to terminate his parental rights at the adjudicatory stage in this case.

> "We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.'" *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)); *see also* N.C.G.S. § 7B-1109(f) (2019). Unchallenged findings are deemed to be supported by the evidence and are "binding on appeal." *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019). "Moreover, we review only those [challenged] findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019); *accord In re A.R.A.*, 373 N.C. 190, 195, 835 S.E.2d 417, 421 (2019) (reviewing only the challenged findings necessary to support the trial court's determination that grounds for termination existed).

*In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 737–38 (2020) (alteration in original).

In this case, the trial court concluded that petitioner proved that grounds existed to terminate respondent's parental rights based on neglect and willful abandonment based on the following findings of fact:

> 11. From 2012 until July 2016, the Respondent had sporadic contact with the Petitioner using the Facebook messenger app.

12. From 2012 until the summer of 2016, the Respondent visited with the child approximately three to four times. These visits were of short duration and in a public location. The Petitioner arranged these visits because the minor child did not know the Respondent.

13. On or about July 1, 2016, the Petitioner agreed for the minor child to have an overnight visit at the Respondent's home.

14. When the minor child returned after her visit at the Respondent's home, she was dirty and smelled of cigarette smoke. The minor child told the Petitioner that the Respondent had a "smoke room" in his home.

15. The Petitioner contacted the Respondent using Facebook messenger and an argument ensued. The Petitioner told the Respondent she would not bring the minor child back to him.

16. The Respondent did not have any further contact with the Petitioner until March 2019, after he was served with the petition filed in this matter.

17. The Respondent has not provided financial support for the minor child at any time that she has been in the Petitioner's care since 2012.

18. The Respondent has been self-employed as a mechanic. He is under no physical or mental disability that prevents him from being gainfully employed. The Respondent has had the ability to provide financial support for the minor child but has provided no support since the parties separated.

19. The Respondent has four other children. He pays child support for two of the children that do not reside in his primary custody.

20. The Respondent never filed any type of custody action seeking visitation with the minor child. The Respondent has not sought any visits with the minor child since July 2016.

21. The Respondent has had no contact with the minor child since July 2016.

22. The Respondent has never sent the minor child any type of gift or customary or expected tokens of affection on her birthday, Christmas, or any holiday.

23. The Respondent has failed to provide for the minor child's physical and economic needs while she has been in the care of the Petitioner since 2012.

24. During the six-months immediately preceding the filing of the petition to terminate his parental rights, the Respondent had no contact with the minor child and did not provide any financial support.

25. The Respondent has failed to perform his natural and legal obligations of support and maintenance as a parent for the minor child.

Respondent first argues the trial court erred by determining that his parental rights to Nicole were subject to termination based on willful abandonment. Under N.C.G.S. § 7B-1111(a)(7), the trial court may terminate a parent's parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(7).

> "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251, 485 S.E.2d at 617

(citation omitted). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citation omitted). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." *In re Adoption of Searle*, 82 N.C. App. 273, 276, 346 S.E.2d 511, 514 (1986). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. 71, 77, 833 S.E.2d 768, 773 (2019) (citation omitted).

*In re B.C.B.*, 374 N.C. at 35–36, 839 S.E.2d at 752 (alterations in original).

Petitioner filed the petition to terminate respondent's parental rights on 14 March 2019. Thus, the determinative six-month period for willful abandonment was from 14 September 2018 through 14 March 2019.

Respondent challenges several of the trial court's findings as not supported by the evidence, including findings of fact 12 and 17. Those findings of fact concern the number and duration of his visits with Nicole prior to the summer of 2016, petitioner's reason for scheduling those visits, and his failure to contribute anything to Nicole's care. Respondent directs this Court's attention to evidence that petitioner did not remember how many visits respondent had with Nicole before 1 July 2016, that he was more involved in Nicole's life prior to 2012, and that he paid for a dance class for Nicole in 2016. We note that respondent's challenges to findings of fact 12 and 17 do

not relate to the determinative six-month period, but that the trial court may still rely on the findings to evaluate respondent's credibility and intentions. *See In re N.D.A.*, 373 N.C. at 77, 833 S.E.2d at 773.

We agree with respondent that the trial court's finding of fact 17, that respondent failed to provide financial support for the minor child since 2012, is not consistent with the evidence at the termination hearing showing that at one point in 2016 respondent paid $160 for a dance class for the minor child. Nevertheless, other than this one payment, the record is clear that respondent did not provide any financial support to the child from 2016 to the date the termination petition was filed, including during the relevant six-month period.

As for finding of fact 12, even assuming that respondent had more than three to four visits with the child between 2012 and 2016, it is undisputed that after the summer of 2016 respondent neither contacted nor visited the child at any point during the almost three years preceding the filing of the termination petition, including within the relevant six-month period. Moreover, respondent testified that he did not see the minor child at any point during 2014 or 2015 and that he saw the child three times during 2016, meaning that he only saw the child three times between 2014 and 2016, and did not see the child at any point after mid-2016.

Respondent asserts, and we agree, that the trial court does not utilize the word "willful" when discussing whether respondent's conduct met the required statutory standard of willful abandonment. Nevertheless, when read in context, the trial court's

order makes clear that the court applied the proper willfulness standard to determine that respondent willfully abandoned the child under N.C.G.S. § 7B-1111(a)(7). When evaluating the findings together, it is evident that the trial court took into consideration that respondent did not contact the minor child or petitioner at any point in the nearly three years preceding the filing of the termination petition. Only after the filing did petitioner reach out. Similarly, during the years preceding the filing, respondent never pursued court-ordered visitation with the child, nor did he utilize any avenue to arrange visits with the minor child since mid-2016. In sum, from the summer of 2016 to the filing of the termination petition, which occurred on 14 March 2019, respondent made no attempt to contact the child.

Though in July 2016 respondent and petitioner got into a disagreement via Facebook Messenger and petitioner testified that she told respondent that she was "done messaging [respondent]," nothing in the record indicates that petitioner blocked respondent from further communicating with her or from seeking to communicate with the minor child. Respondent knew how to contact petitioner through Facebook Messenger despite not having her phone number, but respondent did not make any effort to contact the child in a nearly three-year time span. *See In re L.M.M.*, 847 S.E.2d 770, 775–76 (N.C. 2020) (concluding that the trial court did not err by terminating the respondent's parental rights based on willful abandonment where, though the petitioner had blocked the respondent on Facebook, the respondent

utilized no other channel to contact the petitioner or minor child during the determinative period).

The trial court's conclusion that respondent's conduct met the statutory standard of abandonment of the child is consistent with other cases in which this Court has upheld termination based on willful abandonment. *See In re K.N.K.*, 374 N.C. at 54–55, 839 S.E.2d at 738–39 (concluding that termination was justified based on willful abandonment where the respondent had no contact with the minor child, provided no financial support, and sent no cards, gifts, or other tokens of affection not only during the determinative six-month period, but at any point during the approximately three years preceding the filing of the termination petition); *In re B.C.B.*, 374 N.C. at 40–41, 839 S.E.2d at 754–55 (concluding that the trial court properly terminated the respondent's parental rights based on willful abandonment when the respondent chose not to take advantage of visitation and had no contact with the minor child, and reiterating that a parent is not excused from contacting or showing interest in a child even if only limited means are available to do so).

Moreover, the findings as a whole show that the trial court, in making its ultimate determination, properly considered respondent's failure to provide any tangible or financial support. Despite paying for a $160 dance class for the child in 2016, respondent did not provide any other financial or tangible support or any tokens of affection, including cards, for the child from 2016 on, including within the determinative six-month period preceding the filing of the termination petition.

Nonetheless, respondent pays child support for his other biological children who do not reside in his primary custody. *See In re C.J.H.*, 240 N.C. App. 489, 503–04, 772 S.E.2d 82, 92 (2015) (discussing the respondent's failure to provide support during the relevant period when concluding that the respondent had abandoned the juvenile).

While the trial court should have used the statutory language of "willful abandonment" to address respondent's conduct, the trial court's findings that are supported by clear, cogent, and convincing evidence ultimately support the conclusion that respondent's conduct met the statutory criterion of willful abandonment. *Cf. In re N.D.A.*, 373 N.C. at 77–78, 833 S.E.2d at 773–74 (concluding that, despite the trial court's finding that the respondent had failed to contact the minor child or provide support during the six-month period, the record indicated that the respondent had attempted to work out arrangements to visit the child on numerous occasions, including during the relevant six-month period, and therefore the trial court's order did not support termination based on willful abandonment since the trial court failed to make specific findings on whether the respondent's actions were willful).

Because we conclude that termination was proper on willful abandonment grounds, we need not review the neglect ground for termination as contested by respondent. *See In re A.R.A.*, 373 N.C. at 194, 835 S.E.2d at 421 ("[A] finding of only one ground is necessary to support a termination of parental rights . . . .").

Accordingly, the trial court's order terminating respondent's parental rights is affirmed.

AFFIRMED.