IN THE SUPREME COURT OF NORTH CAROLINA

No. 67A20

Filed 11 December 2020

IN THE MATTER OF: A.M.O.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 6 November 2019 by Judge William F. Brooks in District Court, Wilkes County. This matter was calendared in the Supreme Court on 23 November 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Erika Leigh Hamby for petitioner-appellee Wilkes County Department of Social Services.*
>
> *Keith Karlsson for appellee Guardian ad Litem.*
>
> *Robert W. Ewing for respondent-appellant mother.*

HUDSON, Justice.

Respondent appeals from the trial court's order terminating her parental rights in "Adam,"[1] a minor child born in November 2010. Because we conclude the court did not abuse its discretion by determining that termination of respondent's parental rights was in Adam's best interests, we affirm.

---

[1] A pseudonym.

Wilkes County Department of Social Services (DSS) filed a juvenile petition on 26 July 2017 seeking adjudications of abuse, neglect, and dependency for Adam. The petition alleged respondent was involved in a motor vehicle accident in Stone Mountain State Park on 15 June 2017 while Adam was in the vehicle. Respondent then fled with Adam into the park forest so that rangers were unable to determine if the child needed medical care. When she was located, respondent was arrested and charged with driving while impaired, misdemeanor child abuse, and failure to secure a motor vehicle passenger under sixteen years of age. The petition further alleged respondent was hospitalized with spinal injuries after another motor vehicle accident on 24 July 2017 and was unable to care for Adam.

Following respondent's arrest on 15 June 2017, Adam was moved into a kinship placement with his maternal aunt and uncle. On the day DSS filed its petition, the trial court placed Adam in nonsecure custody with DSS, but he remained in his kinship placement.

The trial court held a hearing on the petition on 11 September 2017 and entered an order adjudicating Adam a neglected juvenile on 20 November 2017. The court made findings consistent with DSS's allegations and noted the agency's "ongoing concerns of both mental health and substance abuse issues for [respondent] based on arrest records, contacts, and a history of traffic accidents."[2] The court

---

[2] Prior to the car accident, DSS had received a report on 14 April 2017 that Adam had witnessed respondent being sexually assaulted by her then-boyfriend while the couple was

awarded legal and physical custody of Adam to DSS and authorized his continued placement with his maternal aunt and uncle. Respondent was granted twice-monthly supervised visitation.

Respondent signed a Family Services Case Plan with DSS on 14 September 2017 in which she agreed to do the following: obtain substance abuse and mental health assessments and follow all treatment recommendations, submit to random drug screens, write a statement explaining why Adam was taken into custody, attend parenting classes, obtain employment and register to pay child support, obtain appropriate housing, maintain weekly contact with the DSS social worker and notify the social worker of any criminal charges, attend all meetings and court proceedings, and comply with all court orders.

At the initial permanency planning hearing on 11 June 2018, the trial court assessed respondent's minimal compliance with her case plan and concluded that further "reunification efforts clearly would be unsuccessful or . . . inconsistent with [Adam's] health, safety or wellbeing and need for a safe, permanent home within a reasonable time." The court relieved DSS of reunification efforts and established a permanent plan for Adam of custody with an approved caretaker with a secondary plan of guardianship. Respondent was granted twice-monthly supervised visitation

---

drinking alcohol and snorting Xanax. When DSS finally located respondent on 31 May 2017, she refused a forensic interview for Adam but agreed to obtain therapy for him.

for a minimum of one hour, conditioned upon her passing a random drug/alcohol screen as a condition of any visitation.

Following a permanency planning review hearing on 1 October 2018, the trial court changed Adam's primary permanent plan to adoption. The court incorporated into its findings reports from DSS and the guardian *ad litem* (GAL) that respondent had accrued new criminal charges, including felony drug possession, "was bonded out of jail in early September[,] . . . [and] will be attending a year-long treatment program in Hickory, NC called Safe Harbor star[t]ing October 1, 2018." The court ordered that respondent, who had not visited Adam since April 2018, "shall have no visitation with the child unless and until [she] is granted such privileges by a Court of competent jurisdiction after proper motion and notice to all other parties."

At a review hearing on 1 April 2019, the trial court found respondent had failed to attend the treatment program in Hickory and had instead absconded from probation which resulted in a period of incarceration. Respondent claimed to have started opioid treatment on 28 February 2019 but had yet to obtain a mental health assessment or address her alcohol abuse and had not visited Adam since April 2018. The court maintained Adam's primary permanent plan as adoption with a secondary plan of guardianship but reinstated respondent's twice-monthly supervised visitation conditioned on the approval of Adam's therapist and respondent passing a drug screen prior to each visit.

DSS filed a petition to terminate respondent's parental rights in Adam on 1 April 2019. After a hearing on 30 July 2019, the trial court entered an order terminating respondent's parental rights (TPR Order) on 6 November 2019.

Based on findings of fact made by clear, cogent, and convincing evidence, the court adjudicated the following statutory grounds for termination: respondent had neglected Adam and was likely to repeat that neglect if the child were returned to her care, *see* N.C.G.S. § 7B-1111(a)(1) (2019); respondent had willfully left Adam in an out-of-home placement for more than twelve months without making reasonable progress to correct the conditions that led to his removal by DSS, *see* N.C.G.S. § 7B-1111(a)(2) (2019); and respondent had willfully abandoned Adam for the six-month period immediately preceding DSS's filing of its petition on 1 April 2019, *see* N.C.G.S. § 7B-1111(a)(7) (2019). The court made additional dispositional findings based on the factors in N.C.G.S. § 7B-1110(a) (2019) and concluded it was in Adam's best interests for respondent's parental rights to be terminated.

Respondent filed timely notice of appeal from the termination order pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019). On appeal, respondent does not challenge the trial court's conclusion that grounds exist to terminate her parental rights pursuant to N.C.G.S. § 7B-1111(a)(1)–(2) and (7). However, she contends the court erred at disposition by concluding it was in Adam's best interests that her rights be terminated.

The statute governing the dispositional stage of a termination of parental rights proceeding provides as follows:

> After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. . . . In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). The court must "consider" each of the statutory factors but need only make written findings as to factors for which there is conflicting evidence. *In re A.R.A.*, 373 N.C. 190, 199 (2019).

"The trial court's dispositional findings are binding on appeal if they are supported by any competent evidence" or if they are not specifically contested by the parties. *In re E.F.*, 375 N.C. 88, 91 (2020). The trial court's determination of "whether terminating the parent's rights is in the juvenile's best interest[s]" under N.C.G.S. §

7B-1110(a) "is reviewed solely for abuse of discretion." *In re A.U.D.*, 373 N.C. 3, 6 (2019). Under this deferential standard, we will reverse the court's assessment of a child's best interests only if its decision is "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *In re J.S.*, 374 N.C. 811, 822 (2020) (quoting *In re K.N.K.*, 374 N.C. 50, 57 (2020)).

Counsel for respondent anchors his argument on appeal to the premise that the proper standard of review for the trial court's best-interests determination under N.C.G.S. § 7B-1110(a) is *de novo*, rather than abuse of discretion. Respondent contends that a "[p]roper application of a *de novo* standard will result in reversal in this case."

In *In re J.J.B.*, 374 N.C. 787 (2020), this Court was presented with the same argument from counsel in favor of applying a *de novo* review standard to the trial court's best-interests determination under N.C.G.S. § 7B-1110(a). After due consideration of counsel's position, we unanimously "reaffirm[ed] our application of an abuse of discretion standard of review to the trial court's determination of 'whether terminating the parent's rights is in the juvenile's best interest[s.]' " *Id.* at 791 (alterations in original) (quoting *In re Z.A.M.*, 374 N.C. 88, 99–100 (2020)). We again decline to alter our longstanding standard of review. *See, e.g.*, *In re L.M.T.*, 367 N.C. 165, 171 (2013); *In re Montgomery*, 311 N.C. 101, 110 (1984).

Having staked her entire appeal on this Court undertaking a *de novo* review of Adam's best interests, respondent offers no argument—even in the alternative—

positing that the trial court's decision is so unreasonable or arbitrary as to amount to an abuse of discretion. "It is not the role of the appellate courts . . . to create an appeal for an appellant." *Viar v. N. Carolina Dep't of Transp.*, 359 N.C. 400, 402 (2005). Given respondent's tactical choice to disregard what she acknowledges to be the existing standard of review in favor of an argument based entirely on this Court's adoption of a new standard, we could conclude our analysis here. *Cf. generally Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606 (2005) ("It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein."). Nevertheless, based on our review of the evidence and trial court's order, we are satisfied the court did not abuse its discretion in determining that Adam's best interests warranted the termination of respondent's parental rights.

The trial court made the following uncontested findings which demonstrate its consideration of the factors in N.C.G.S. § 7B-1110(a):

> 2.     [Adam] is currently eight (8) years old.
>
> 3.     He is placed in the home of [his maternal aunt and uncle], and has been in that placement since June 16, 2017.
>
> 4.     [His maternal aunt and uncle] are eager to adopt [Adam].
>
> 5.     [Adam] is very bonded to his aunt and uncle . . ., and is happy in their home. He is able to maintain contact with his maternal grandmother and other extended family.
>
> . . . .

7. At some visits [Adam] and Respondent Mother would play happily, and he would hug her and hang out with her, but at the end of the visit there were no tears and he appeared ready to return to his aunt's home. At other times he would cry and get angry because he didn't understand why it was taking so long for him to get back to his mother.

8. He is currently in the third grade and doing well. Early in his placement with his aunt and uncle he struggled academically, but has been receiving good grades lately and he has been acting as if education is important to him.

9. When [Adam] was initially placed with his aunt and uncle he had some aggressive behaviors and did not like structure. He did not know how to bathe himself or wipe himself, and would cause himself to throw up after eating.

10. At this time the minor child has made a complete turnaround in his behaviors, and the Social Worker describes him as a "southern gentleman."

. . . .

12. At this time [Adam's] therapist doesn't believe that contact with his mother or [her new husband] would be beneficial for the minor child.

13. [Adam] doesn't speak about his mother much, but when he does he says he loves and misses her, but feels safe at his aunt's home. Sometimes he will talk about going fishing with his mom, but will then talk about how she told him to get away from the police. He still asks about his mom and where she is, and if she is okay.

14. [Adam] expressed he wishes to remain with his aunt and uncle because he feels safe in their home.

15.     There is a high likelihood that [Adam] will be adopted.

16.     Adoption was approved as one of the concurrent Permanent Plans for [Adam] . . . .

17.     Termination of parental rights will aid in the accomplishment of this plan.

18.     [Adam] has spent one quarter of his life in his aunt and uncle's home.

19.     It appears that [Adam] cares for his mother and will always love her as well as his deceased father.

20.     . . . [T]here is a very loving and strong bond with his aunt and uncle. [Adam] feels safe and supported with his aunt and uncle.

We are bound by these findings for purposes of our review. *See In re E.F.*, 846 S.E.2d at 632.

The trial court reached the following conclusions of law based on its dispositional findings of fact:

5. That termination of the Respondent's parental rights is in the best interest of [Adam] pursuant to N.C.G.S. § 7B-1110 in that;

> a. There is a waning bond between [Adam] and Respondent Mother.
>
> b. There is a strong and loving bond between [Adam] and his aunt and uncle.
>
> c. [Adam] is deserving of permanency and an opportunity to excel.
>
> d. There exists a strong possibility of adoption of

> [Adam] by his aunt and uncle.
>
>    e.    [Adam] is in need of care that Respondent Mother cannot currently provide.
>
> 6. Based on the age of [Adam], his bond with his current foster family, and the need to accomplish a Permanent Plan to provide stability for [him] it is in the best interest of [Adam] and is consistent for his health and safety for the Respondent's parental rights to be terminated so that [he] can proceed with the Permanent Plan of adoption.

In a footnote to her argument, respondent takes exception to the trial court's description of her bond with Adam as "waning" in Conclusion of Law #5(a). She contends "the evidence presented at the termination hearing does not support this conclusion of law."

We view the statement challenged as more properly classified as a finding of fact. *See In re Z.L.W.*, 372 N.C. 432, 437 (2019) ("The trial court also found . . . that the [parent-child] bond had diminished over the long time that [the juveniles] had spent in foster care."). Though included in Conclusion of Law #5, subparts (a)–(e) serve to provide the factual bases for the trial court's conclusion that termination of respondent's parental rights is in Adam's best interests, in accordance with the criteria listed in N.C.G.S. § 7B-1110(a).

Competent evidence, as well as the trial court's uncontested findings of fact, supports the court's finding that Adam and respondent's bond was diminishing over time since Adam entered DSS custody in July of 2017. In addition to dispositional Findings of Fact 7, 13, 14, and 19 quoted above, the trial court's adjudicatory findings

show respondent attended just six visits with Adam between January and April of 2018 and had not visited him since 13 April 2018, more than fifteen months before the 30 July 2019 termination hearing. Moreover, respondent had been "allowed weekly phone calls with [Adam] from September 2017 through July 2018. Initially she availed herself of these calls, but when these calls were ceased in July 2018 she had not called [Adam] in over 6 weeks." Each of these findings is supported by the DSS social worker's testimony. As reflected in the trial court's findings, the social worker and GAL reported that Adam still loves respondent but does not "talk about her outside of being asked[.]"Asked directly by the trial court, the maternal aunt testified that Adam spoke "less" about respondent rather than more as time has gone on. Finally, as stated in dispositional Finding of Fact 14, the social worker testified Adam had expressed his desire to remain with his aunt and uncle permanently. Respondent's argument about Conclusion of Law 5(a) is without merit.

Respondent also claims the trial court should have awarded guardianship of Adam to his maternal aunt and uncle pursuant to N.C.G.S. § 7B-600(a) (2019) rather than terminating respondent's parental rights in order to allow the aunt and uncle to adopt Adam. Given Adam's young age and desire to maintain a relationship with his mother, respondent contends guardianship is a superior outcome to adoption, providing Adam with a permanent home without unnecessarily severing the parental bond. *See* N.C.G.S. § 7B-100(4) (2019).

Similar arguments were raised in the recent cases *In re Z.L.W.*, 372 N.C. 432

(2019) and *In re Z.A.M.*, 374 N.C. 88 (2020). In both instances, the trial court concluded that it was in the juveniles' best interests to terminate the respondent-parents' rights despite the existence of a strong parent-child bond. *In re Z.A.M.*, 374 N.C. at 100 ("Respondents both assert that the trial court did not give enough weight to the children's bond with them, nor did the court take into account the children's preferences."); *In re Z.L.W.*, 372 N.C. at 437 ("[T]he trial court made extensive findings regarding the strong bond between respondent and [the juveniles]. The trial court also found, however, that the bond had diminished over the long time that [the juveniles] had spent in foster care."). The respondent-parents also argued that the trial court should have considered guardianship for the juveniles in lieu of adoption. *In re Z.A.M.*, 374 N.C. at 100 ("Respondents . . . assert that the trial court should have considered guardianship as an option so the parents could have the chance to regain custody of the children in the future."); *In re Z.L.W.*, 372 N.C. at 438 ("Respondent further argues. . . the trial court should have considered other dispositional alternatives, such as granting guardianship or custody to the foster family, thereby leaving a legal avenue by which [the juveniles] could maintain a relationship with their father.").

In both *In re Z.A.M.* and *In re Z.L.W.*, we concluded the trial court did not abuse its discretion in choosing to terminate the respondents' parental rights. While acknowledging the existence of the bond between the respondents and their children, we noted "the bond between parent and child is just one of the factors to be considered

under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give greater weight to other factors." *In re Z.A.M.*, 374 N.C. at 100 (quoting *In re Z.L.W.*, 372 N.C. at 437). Moreover,

> this Court rejected the respondent's argument that the trial court should have considered dispositional alternatives, such as granting guardianship or custody to the foster family. This Court explained that,
>
> > [w]hile the stated policy of the Juvenile Code is to prevent "the unnecessary or inappropriate separation of juveniles from their parents," N.C.G.S. § 7B-100(4) (2017), we note that "the best interests of the juvenile are of paramount consideration by the court and . . . when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time," *id.* § 7B-100(5) (2017)[.]

*Id.* at 100–01 (emphasis omitted) (quoting *In re Z.L.W.*, 372 N.C. at 438).

Here, as in *In re Z.A.M.* and *In re Z.L.W.*, the trial court made detailed dispositional findings regarding the factors in N.C.G.S. § 7B-1110(a) and provided a reasoned basis for its conclusion that it was Adam's best interests to be adopted into the safe and loving home of his maternal aunt and uncle, where he has resided since June 2017. *In re Z.A.M.*, 374 N.C. at 101; *In re Z.L.W.*, 372 N.C. at 437–38. Therefore, we hold the trial court did not abuse its discretion in terminating respondent's parental right and so affirm the termination order.

AFFIRMED.