IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-27

No. 91A20

Filed 19 March 2021

IN THE MATTER OF: I.R.M.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 21 November 2019 by Judge Elizabeth T. Trosch in District Court, Mecklenburg County. This matter was calendared for argument in the Supreme Court on 11 February 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee mother.*

*J. Thomas Diepenbrock for respondent-appellant father.*

BARRINGER, Justice.

¶ 1    Respondent-father appeals from the trial court's order entered on 21 November 2019 terminating the parental rights of respondent-father to I.R.M.B. (Isabel).[1] After a review of the record, we conclude that the trial court's unchallenged findings of fact support the trial court's conclusion to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7) (2019). Therefore, we affirm.

## I.    Factual and Procedural Background

---

[1] The pseudonym Isabel is used to protect the identity of the juvenile and for ease of reading.

¶ 2        In December 2013, Isabel was born to petitioner-mother and respondent-father in California. Petitioner-mother and respondent-father were never married but had an "on and off relationship" from the time Isabel was about three months old until she was a year old.

¶ 3        During their relationship, respondent-father committed at least eight acts of intimate partner violence against petitioner-mother and threatened bodily harm to petitioner-mother before and after Isabel was born. On 10 November 2014, petitioner-mother obtained a temporary restraining order from the Superior Court of California, County of Los Angeles, against respondent-father after he hit her in the face while she was driving with Isabel in the back seat. Later in November, respondent-father was incarcerated on charges unrelated to petitioner-mother and was not released until April 2017.

¶ 4        On 2 December 2014, the Superior Court of California, County of Los Angeles, issued a three-year restraining order. The restraining order prohibited respondent-father from, among other things, directly or indirectly contacting petitioner-mother or Isabel. The court also issued a child custody and visitation order granting petitioner-mother sole legal and physical custody of Isabel and prohibiting respondent-father from having visitation with Isabel.

¶ 5        On 26 December 2014, petitioner-mother and Isabel moved from California to North Carolina. Petitioner-mother and Isabel entered North Carolina's address

confidentiality program, which shielded their physical address from respondent-father, and petitioner-mother discontinued her digital footprint.

¶ 6 On 14 October 2015, respondent-father, through counsel, filed a "Petition to Establish Parental Relationship" in California, seeking joint legal custody of Isabel and reasonable, supervised visitation with Isabel. On 3 December 2015, petitioner-mother filed a response to respondent-father's petition opposing joint custody and visitation.

¶ 7 On 20 June 2016, petitioner-mother filed a petition to terminate respondent-father's parental rights in District Court, Mecklenburg County. Petitioner-mother alleged that respondent-father had never exercised visitation with Isabel pursuant to an informal agreement between the parties, willfully failed to provide any financial support to Isabel and petitioner-mother, failed to provide consistent care to Isabel or petitioner-mother, never provided any emotional support to Isabel, and willfully abandoned Isabel.

¶ 8 On 12 October 2016, respondent-father filed a motion to dismiss the petition to terminate his parental rights pursuant to Rule 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure. He argued that North Carolina did not have subject-matter jurisdiction, because the child custody order was still in effect in California and respondent-father's motion to modify the child custody order was still pending. On 23 May 2017, the District Court, Mecklenburg County issued an order

staying the termination of parental rights proceeding "pending the complete adjudication of the subject-matter jurisdiction issue" in the California custody proceeding. Respondent-father was released from incarceration in April 2017. In September 2017, petitioner-mother obtained a five-year extension of the California restraining order.

¶ 9        On 13 June 2018 and 13 September 2018, hearings were held in the Superior Court of California, County of Los Angeles, on petitioner-mother's request for an order finding California a forum non-conveniens. On 23 October 2018, the California Superior Court ordered that California was an inconvenient forum for custody and visitation and ordered that all future proceedings should be filed in North Carolina. The parties' case was stayed pending North Carolina's determination of jurisdiction.

¶ 10        On 15 March 2019, petitioner-mother filed a motion to vacate District Court, Mecklenburg County's 23 May 2017 order staying the termination of parental rights proceeding and requested the trial court enter judgment assuming jurisdiction over the termination of parental rights proceeding. On 3 June 2019, the District Court, Mecklenburg County found that petitioner-mother and Isabel reside in North Carolina and have significant ties to the State and concluding that it had jurisdiction over the subject matter and parties. Petitioner-mother's motions were granted; the trial court lifted the stay and assumed jurisdiction.

Hearings for the petition to terminate respondent-father's parental rights were held on 10 and 11 October 2019. On 21 November 2019, the trial court entered an order concluding that grounds existed to terminate respondent-father's parental rights to Isabel pursuant to N.C.G.S. § 7B-1111(a)(7). The court also determined that it was in Isabel's best interests that respondent-father's parental rights be terminated. *See* N.C.G.S. § 7B-1110(a). Respondent-father appealed.

## II.    Standard of Review

Our Juvenile Code provides for a two-step process for the termination of parental rights—an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, 1110. At the adjudicatory stage for termination of parental rights under N.C.G.S. § 7B-1111(a), the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds. N.C.G.S. § 7B-1109(e), (f). If the trial court finds the existence of one or more grounds to terminate the respondent's parental rights, the matter proceeds to the dispositional stage where the court must determine whether terminating the parent's rights is in the juvenile's best interests. N.C.G.S. § 7B-1110(a).

We review a trial court's adjudication under N.C.G.S. § 7B-1111 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111 (1984). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*,

373 N.C. 16, 19 (2019). Unchallenged findings are deemed to be supported by the evidence and are binding on appeal. *In re Z.L.W.*, 372 N.C. 432, 437 (2019).

### III.  Analysis

On appeal, respondent-father contends that (1) the trial court made findings of fact that were not supported by the evidence; and (2) the trial court's findings were insufficient to support its conclusion that respondent-father willfully abandoned Isabel pursuant to N.C.G.S. § 7B-1111(a)(7).

Termination under N.C.G.S. § 7B-1111(a)(7) requires proof that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition[.]" As used in N.C.G.S. § 7B-1111(a)(7), abandonment requires a "purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to [the child]." *In re A.G.D.*, 374 N.C. 317, 319 (2020). The existence of willful intent "is an integral part of abandonment" and is determined according to the evidence before the trial court. *Pratt v. Bishop*, 257 N.C. 486, 501 (1962). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. 71, 77 (2019) (quoting *In re D.E.M.*, 257 N.C. App. 618, 619 (2018)).

¶ 16    In support of its conclusion that grounds existed to terminate respondent-father's parental rights based on willful abandonment, the trial court made the following pertinent findings of fact:

> 19. During the course of [petitioner-mother and respondent-father's relationship], at least from pregnancy until approximately 6 November 2014, Respondent[-father] committed at least eight acts of intimate partner violence against Petitioner[-mother].
>
> . . . .
>
> 35. Respondent[-father]'s statements and conduct during that period of time [from Isabel's birth to August 2014] demonstrate that he was not only unwilling to initiate action to establish a relationship and bond with the juvenile, but that he would use power and control tactics to intimidate and threaten Petitioner[-mother]. Oftentimes his contact with Petitioner[-mother], while shrouded in a motivation to visit with juvenile, ultimately served the purpose of threatening and intimidating her.
>
> . . . .
>
> 41. Respondent[-father] continued to initiate contact with Petitioner[-mother] by text message cursing her, and denigrating her actions . . . .
>
> . . . .
>
> 44. In response, Petitioner[-mother] again stated in a text message that she didn't feel safe and felt that the juvenile was at risk of exposure to the violence.
>
> 45. Ultimately, on or about November 10, 2014, Petitioner[-mother] sought and obtained a temporary restraining order; Respondent[-father] was served with same on November 11, 2014.

46. A hearing was held on December 2, 2014, but Respondent[-father] did not attend because he was incarcerated and in the custody of law enforcement at the time of that hearing.

47. Petitioner[-mother] obtained a permanent restraining order that remained and was in effect for a period of three years.

48. Pursuant to that restraining order, Respondent[-father] was prohibited from having any contact with Petitioner[-mother] or with the juvenile. Respondent[-father] was also prohibited from having visitation with the juvenile.

49. While the order prohibited third-party efforts to obtain Petitioner[-mother]'s address or to establish contact with her, the order did not, or would not have prohibited Respondent[-father] from initiating court proceedings or seeking the assistance of legal counsel to establish a custody arrangement, or visitation with the juvenile.

50. On or about December 26, 2014, Petitioner[-mother] moved from the State of California where she and Respondent[-father] both lived, and where the juvenile was born; she did this in order to establish a safe home for the juvenile and also to establish herself in a location where she would have family support and be able to seek employment free from Respondent[-father]'s harassment and threats to disrupt her employment. She also sought and was granted protection through a victim protection program that shielded her address from Respondent[-father].

51. Respondent[-father] voluntarily submitted himself to a law enforcement entity to serve a prison sentence and he was incarcerated from November 2014 until sometime in April of 2017.

52. During the time while incarcerated, on or about 11 February 2015, Respondent[-father] sent Petitioner[-

mother] and the juvenile a Valentine's Day card. It was sent to Petitioner[-mother]'s previous address she had in the State [of] California prior to moving in December 2014, and the card was forwarded to Petitioner[-mother]'s address in Charlotte, NC. That [was] the only attempt Respondent[-father] made to establish contact with the juvenile, or to facilitate a parental bond and relationship with her.

53. Respondent[-father], through legal counsel during and while incarcerated in the State of California, initiated an action for custody and to establish paternity in November 2015 in the State of California.

54. Petitioner[-mother] was served with a Summons and other legal documents from that action. She retained legal counsel and provided her address both to her legal counsel, to the court, and to Respondent[-father]'s legal counsel.

55. The question of whether the State of California could or should exercise jurisdiction over this custody matter was at issue; but nevertheless Respondent[-father] through legal counsel made no efforts to inquire about the juvenile's wellbeing; to request an opportunity to establish a bond or relationship with her either through letters, photographs, or to provide support for the juvenile directly or through a third-party. There was no evidence that Respondent[-father] was unable to provide any kind of emotional or material support to the juvenile from November 2015, when he initiated the paternity and custody action in the State of California, until the petition to terminate his parental rights was filed in the State of North Carolina.

56. The court finds that Respondent[-father]'s conduct even after the petition to terminate his parental rights was filed is relevant because it infers willfulness in his failure to initiate contact, inquire about the wellbeing, to attempt to provide any kind of material or emotional support to the juvenile during the 6 months immediately preceding the filing of the petition.

57. Even after the petition to terminate parental rights was initiated and continuing until the date of trial, Respondent[-father] has never made any effort in any way to seek information about juvenile's wellbeing—i.e., about what she does, what she's interested in, whether she's in school, to understand her personality, to ascertain her needs. Indeed, he has made no effort to provide any kind of emotional support to her and/or any kind of material support to the juvenile, or to Petitioner[-mother].

58. Nor has Respondent[-father] demonstrated any efforts since his release from prison in 2017 that shows a desire to seize the opportunity to be in a relationship that inures to the biological connection that Respondent[-father] has with the juvenile.

59. Respondent[-father]'s conduct, even since his release from custody in 2017, demonstrates his failure to inquire about, his failure to seek a bond and connection with, or to provide any kind of emotional and material support for the juvenile during the six months immediately preceding the filing of the petition evinces a willfulness and that he willfully abandoned his opportunity to seize the parent/child relationship, and his duties to provide for her emotionally and materially.

## Respondent[-father]'s Objection

60. Respondent[-father], through his attorney of record, objects to the court's findings that Respondent[-father] willfully refused to communicate or seek information about the juvenile while the Permanent Restraining Order was in effect.

## Specific Finding in Response to Noted Objection

61. Respondent[-father]'s constraints to establishing a bond or maintaining contact with the juvenile were erected and created as a result of his own unlawful misconduct. Specifically, Respondent[-father] committed repeated acts of violence, harassment and intimidation against

> Petitioner[-mother] in [the] year 2014. And, as a result, Petitioner[-mother] sought a[nd] received a permanent domestic violence protective order against him. In addition, Respondent[-father]'s other criminal conduct resulted in his incarceration from November 2014 through April 2017. But, despite those constraints which were created as a result of his own misconduct, there were things Respondent[-father] could have done either through legal counsel or by pursuing other litigation to inquir[e] about or seek a bond with the juvenile that he did not do.
>
> 62. And, so this court finds and concludes as a matter of law that Petitioner[-mother] has proven by clear cogent and convincing evidence grounds to terminate Respondent[-father]'s parental rights by willful abandonment pursuant to N.C.G.[S.] § 7B-1111(a)(7).

¶ 17    First, we address respondent-father's preliminary argument that a portion of finding of fact 59 and finding of fact 62 are improperly characterized as findings of fact. We agree as to finding of fact 62. However, the challenged portion of finding of fact 59, stating that respondent-father's conduct "evinces a willfulness and that he willfully abandoned his opportunity to seize the parent/child relationship, and his duties to provide for [Isabel] emotionally and materially" is a finding of fact. This Court has recognized that when addressing termination of parental rights appeals, "[t]he willfulness of a parent's actions is a question of fact for the trial court." *See In re K.N.K.*, 374 N.C. 50, 53 (2020).

¶ 18    Next, we consider whether the unchallenged findings of fact support the trial court's conclusion to terminate his parental rights based on willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7). Because we conclude the unchallenged findings

of fact support the trial court's conclusion to terminate respondent-father's rights pursuant to N.C.G.S. § 7B-1111(a)(7), we need not consider respondent-father's challenge to findings of fact 56, 57, 58, and 59. Additionally, all the challenged findings of fact address respondent-father's action or inaction outside the determinative period—after the filing of the petition for termination of rights.

¶ 19     While respondent-father contends his conduct did not evince a settled purpose to forego all parental duties or to relinquish all parental claims to Isabel given that the restraining order precluded contact with Isabel and petitioner-mother, this argument is unavailing given the unchallenged findings of fact before the Court. As in *In re E.H.P.*, 372 N.C. 388, 394 (2019), the findings of fact show that respondent was aware of his ability to seek legal custody and visitation rights as Isabel's father and how to obtain such relief despite the limitations of the restraining order and his incarceration. He filed such a petition before the determinative period began on 20 December 2015 but took no further action during the determinative period.[2] He also did not provide any emotional or material support during the determinative period even though he could have. A respondent's action before the determinative period

---

[2] While respondent-father argues his "actions of maintaining and pursuing the parentage, custody and visitation action he filed in October 2015 demonstrated his desire to have a relationship with his daughter," he has neither contested the relevant trial court findings of fact nor cited evidence presented at trial or testimony that support this argument. Petitioner-mother's undisputed testimony is that while respondent-father filed the referenced petition in California, it was taken off calendar and respondent-father took no further action to get the case back on the calendar or resolved. Petitioner-mother explained that all actions to reach a resolution were initiated by her.

"are also relevant in interpreting whether his conduct during the window signified willful abandonment." *In re E.B.*, 375 N.C. 310, 320 (2020). Respondent-father's actions as found by the trial court, which led to the entry of the restraining order, further supports a reasonable inference of willfulness for purposes of N.C.G.S. § 7B-1111(a)(7). As a result, we affirm the trial court's order terminating respondent-father's parental rights.

## IV.     Conclusion

The trial court's unchallenged findings of fact supported the trial court's order terminating respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7). Accordingly, we affirm.

AFFIRMED.