IN THE SUPREME COURT OF NORTH CAROLINA

No. 116A19

Filed 16 August 2019

IN THE MATTER OF: Z.L.W., Z.M.W.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered on 12 December 2018 by Judge Doretta L. Walker in District Court, Durham County. This matter was calendared in the Supreme Court on 1 August 2019 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *The Law Office of Derrick J. Hensley, PLLC, by Derrick J. Hensley, Esq., and Senior Assistant County Attorney Bettyna Belly Abney, for petitioner-appellee Durham County Department of Social Services.*
>
> *Daniel Heyman for appellee Guardian ad Litem.*
>
> *Mary McCullers Reece for respondent-appellant father.*

NEWBY, Justice.

Respondent appeals from the trial court's order terminating his parental rights to Z.L.W. and Z.M.W. (Zena and Zadie).[1] We affirm.

---

[1] Pseudonyms are used to protect the identities of the juveniles and for ease of reading. *See* N.C. R. App. P. 42(b)(1).

On 19 March 2015, the Durham County Department of Social Services (DSS) filed a petition alleging that Zena and Zadie were neglected juveniles. DSS had received a Child Protective Services report on 9 June 2014 claiming that respondent, the father of the juveniles, was "extremely violent" with the juveniles' mother in their presence and had given her a black eye. The person who filed the report expressed concern that respondent might kill the juveniles and their mother. The person further reported an incident during which respondent drove off recklessly with the juveniles in the car while they were not safely secured and that respondent had threatened to fire multiple gun shots at the mother's residence.

DSS began providing services in July 2014. Respondent was required to complete a mental health and substance abuse assessment, engage in domestic violence counseling, and participate in a parent education program. In August 2014, respondent tested positive for marijuana. In September 2014, he completed a substance abuse assessment, but declined a drug screen. Respondent was referred to Carolina Outreach for mental health services, but could not be reached at the contact numbers he provided to social workers. Respondent also failed to attend a parenting education program. At the time the neglect petition was filed, respondent was in the Durham County Detention Center facing criminal charges of assault on a female, driving while license revoked, larceny, and second-degree trespassing.

On 5 May 2015, the trial court adjudicated Zena and Zadie neglected based on findings of fact as stipulated by the parties. The trial court ordered that custody

remain with their mother and required both the mother and respondent to comply with a case plan to correct the conditions that led to the adjudication of neglect.

On 4 November 2015, the trial court entered a review order in which it found that respondent failed to participate in mental health or substance abuse services and used profanity when speaking with a DSS social worker. During a hearing on 3 February 2016, the juveniles' mother tested positive for cocaine. On 3 March 2016, the trial court entered a review order noting the mother's continued use of illegal substances and granting custody of Zena and Zadie to their maternal grandmother.

In a review order entered on 27 April 2016, the trial court found that respondent had not complied with recommended services. In June 2016, the maternal grandmother could no longer provide housing for Zena and Zadie, and she made arrangements for the paternal grandmother to provide care for the juveniles. In a review order entered on 12 September 2016, the trial court granted DSS legal custody, but ordered that Zena and Zadie continue to reside with the paternal grandmother. The placement ended, however, after respondent took Zena and Zadie out of the paternal grandmother's home during an unauthorized visit. In a permanency planning review order entered on 20 October 2017, the trial court ceased reunification efforts and ordered DSS to file a petition to terminate respondent's and the mother's parental rights.

On 29 June 2017, DSS filed a motion and petition to terminate respondent's and the mother's parental rights on the grounds of neglect, willful failure to make

reasonable progress, and failure to pay support. *See* N.C.G.S. § 7B-1111(a)(1)–(3) (2017). DSS additionally alleged that respondent had failed to legitimize Zena. *See id.* § 7B-1111(a)(5) (2017). On 10 April 2018, the mother relinquished her parental rights. On 12 December 2018, the trial court entered an order in which it determined grounds existed to terminate respondent's parental rights regarding Zena pursuant N.C.G.S. § 7B-1111(a)(1), (2), and (5), and regarding Zadie pursuant to N.C.G.S. § 7B-1111(a)(1) and (2). The trial court further concluded it was in Zena's and Zadie's best interests that respondent's parental rights be terminated. Accordingly, the trial court terminated respondent's parental rights. Respondent gave timely notice of appeal pursuant to N.C.G.S. §§ 7A-27(a)(5) and 7B-1001(a1)(1), but improperly designated the Court of Appeals as the court to which appeal was being taken. On 3 May 2019, respondent filed a petition for writ of certiorari, and this Court allowed the petition on 22 May 2019.

Respondent's sole argument on appeal is that the trial court abused its discretion when it determined termination of his parental rights was in Zena's and Zadie's best interests. We disagree.

Our Juvenile Code provides for a two-stage process for the termination of parental rights: the adjudicatory stage and the dispositional stage. *Id.* §§ 7B-1109, -1110 (2017). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under section 7B-1111(a) of the North Carolina General

Statutes. *Id.* § 7B-1109(e), (f) (2017). During the adjudicatory stage in this case, the trial court found that statutory grounds to terminate respondent's paternal rights existed, and that finding is not being challenged on appeal.

When the trial court finds grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), it proceeds to the dispositional stage where it must "determine whether terminating the parent's rights is in the juvenile's best interest" based on the following factors:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* § 7B-1110(a) (2017). The trial court's assessment of a juvenile's best interest at the dispositional stage is reviewed only for abuse of discretion. *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re L.M.T.*, 367 N.C. 165, 171, 752 S.E.2d 453, 457 (2013); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a

reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).

Here, at disposition, the trial court incorporated its adjudicatory findings by reference and made a finding of fact regarding Zena's and Zadie's ages. Additionally, the trial court found as fact:

> 4.      **As to the likelihood of adoption:** [Zena and Zadie] have been in the custody of [DSS] since June 28, 2016. They have been in a total of two placements: a kinship placement with their paternal grandmother, and, currently, a DSS foster home. The girls' current foster parents have expressed their desire to adopt [Zena and Zadie] and provide them with a 'forever home'. They have been providing care for [Zena and Zadie] since March 2017. There is a high probability of adoption.

> 5.      [Zena and Zadie] express a desire to be loved. They love their parents. [Zena] is old enough to understand that there are concerns with her parents' ability to care for her and her sister. Both girls desire to be nurtured. They have bonded with their foster parents and extended foster family. [Zena and Zadie] deserve to be placed with a family who will supply all their basic, emotional, educational, and medical needs.

> 6.      **Achieving the permanent plan:** The primary plan for permanence is Adoption, with a concurrent plan of Guardianship. Termination of the rights of [respondent] would help achieve the primary permanent plan of adoption.

> 7.      **Bond with [respondent]:** [Respondent] has not provided day to day care for [Zena and Zadie] in several years. He attended many of the visits available to him. [Zena and Zadie] have a bond with [respondent]. They have expressed that they love [respondent]. However, [respondent's] bond with [Zena and Zadie] has diminished

over the long time they have spent in foster care.

. . . .

9.    **Quality of relationship with prospective adoptive parent:**  There is a strong bond between [Zena and Zadie] and their prospective adoptive parents. [Zena and Zadie] are very affectionate towards their foster parents, and that affection is sincerely reciprocated. The foster parents refer to the girls as "their girls." Both foster parents are teachers and have provided love, support, and met the basic, educational, and medical needs of the girls. They have incorporated the girls into their family, taking them on family trips to Iowa to meet their family. The girls have bonded well with the foster parents' families.

10.    The foster parents have expressed their desire to adopt them and to have them permanently become a part of their family.

11.    **Other relevant factors:** The Court remains deeply concerned about [respondent's] lack of progress to address [the] core issues of this case. At the time of this hearing, [respondent] reported [that he] continued to search for a mental health provider. [Respondent] offered no satisfactory explanation to this court for not complying with mental health services and not complying with substance abuse treatment, or his failure to attend parenting classes or domestic violence counseling. The Court finds it is paramount that [Zena and Zadie] have a permanent and safe home, and if [Zena and Zadie] were returned to the care of [respondent], [Zena and Zadie] would suffer irreparable harm and the progress [Zena and Zadie] have obtained while in their current placements would be dismantled if returned to [respondent]. The court is also concerned about the safety of [Zena and Zadie] in [respondent's] care, in lieu [sic] of the continued incident[s] of domestic violence and unstable housing. Furthermore, [respondent] describes his childhood while residing with his biological [parents] as being traumatic. [Respondent] expressed that he was beaten, slapped and kicked by his

> mother and that his mother drank a lot. [Respondent] also expressed that his mother has changed, and he wants his mother to have [Zena and Zadie]. This Court is not recommending removing the children from their current plan.

Respondent does not challenge any of the trial court's dispositional findings; thus, they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citing *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962)).

Respondent argues that, though the trial court made findings regarding the enumerated factors, it should have given stronger consideration to the bond between himself and the children and considered options that would have allowed them to maintain their parent-child relationship. Respondent cites testimony from the social worker assigned to the case that Zena and Zadie "love their dad" and "always ask about him, want to see him." Respondent also testified that Zena and Zadie loved him and his family very much "because they know we're going to be there." Respondent thus argued, given the mother's relinquishment of her parental rights and the strong bond between him and his children, the decision to terminate his parental rights constituted an abuse of discretion. We are not persuaded.

In this case, the trial court made extensive findings regarding the strong bond between respondent and Zena and Zadie. The trial court also found, however, that the bond had diminished over the long time that Zena and Zadie had spent in foster care. Furthermore, the bond between parent and child is just one of the factors to be considered under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give

greater weight to other factors. *Cf., e.g., In re C.L.C.*, 171 N.C. App. 438, 448, 615 S.E.2d 704, 709–10 (2005) (holding that, while the mother emphasized she had a strong bond with her child, the trial court was "entitled to give greater weight to other facts that it found"), *aff'd per curiam in part, disc. review improvidently allowed in part,* 360 N.C. 475, 628 S.E.2d 760 (2006). Here the trial court also made uncontested findings that Zena and Zadie had a strong bond with their foster parents; there was a strong likelihood of adoption; and termination of respondent's parental rights would aid in the permanent plan of adoption. Additionally, the trial court, when considering other relevant factors, expressed its concern regarding respondent's lack of progress in addressing the core issues of the case. Specifically, respondent "offered no satisfactory explanation to [the trial] court for not complying with mental health services and not complying with substance abuse treatment, or his failure to attend parenting classes or domestic violence counseling." The trial court believed that Zena and Zadie would suffer irreparable harm and the progress they had made since their removal from home would be "dismantled" if they were returned to his care due to his failure to address his many issues. Consequently, we conclude the trial court appropriately considered the factors stated in N.C.G.S. § 7B-1110(a) when determining Zena's and Zadie's best interests and that the trial court's determination that other factors outweighed respondent's strong bond with Zena and Zadie was not manifestly unsupported by reason.

Respondent further argues that, given the strong bond between him and Zena and Zadie, the trial court should have considered other dispositional alternatives, such as granting guardianship or custody to the foster family, thereby leaving a legal avenue by which Zena and Zadie could maintain a relationship with their father. We disagree. While the stated policy of the Juvenile Code is to prevent "the unnecessary or inappropriate separation of juveniles from their parents," N.C.G.S. § 7B-100(4) (2017), we note that "the best interests of the juvenile are of paramount consideration by the court and . . . when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a *safe, permanent home within a reasonable amount of time*," *id.* § 7B-100(5) (2017) (emphasis added); *see also In re Montgomery*, 311 N.C. at 109, 316 S.E.2d at 251 (emphasizing that "the fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody [is] that the best interest of the child is the polar star").

We therefore hold the trial court's conclusion that termination of respondent's parental rights was in Zena's and Zadie's best interests did not constitute an abuse of discretion. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.