IN THE SUPREME COURT OF NORTH CAROLINA

No. 14A20

Filed 14 August 2020

IN THE MATTER OF: E.F., I.F., H.F., Z.F.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 12 September 2019 by Judge Stephen Higdon in District Court, Union County. This matter was calendared for argument in the Supreme Court on 29 July 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Perry, Bundy, Plyler & Long, LLP, by Ashley J. McBride and Dale Ann Plyler, for petitioner-appellee Union County Division of Social Services.*

*La-Deidre Matthews for appellee Guardian ad Litem.*

*David A. Perez for respondent-appellant.*

NEWBY, Justice.

Respondent appeals from the trial court's order (termination order) terminating her parental rights in her minor children Ethan, Isaac, Henry, and Zane.[1] Because we conclude the trial court did not abuse its discretion by determining that it was in the children's best interests that respondent's parental rights be terminated, we affirm.

---

[1] We use pseudonyms to protect the privacy of the juveniles discussed in this opinion.

Ethan was born in January 2011. His father is Jamie R. Dallas W. is the father of respondent's twins, Isaac and Henry, born in September 2012, and of Zane, born in April 2014. On 19 February 2018, the Union County Division of Social Services (DSS) filed a juvenile petition alleging neglect and dependency. On 26 March 2018, DSS obtained nonsecure custody of the four children. The trial court adjudicated the children to be neglected and dependent juveniles on 22 August 2018.

In support of the adjudication, the trial court found that respondent left the children with Dallas W. when she was arrested on 6 March 2018; that Dallas W. subsequently placed the children with Angela S., a caretaker for the children, because he was unable to care for them; and that Angela S. was unable to obtain necessary medical care for the children because she lacked their Medicaid information and parental authorization. The trial court further found that the family had a history of instability and inadequate housing; that respondent had been evicted from her residence and was unable to secure suitable housing; and that respondent was unemployed, suffered from untreated mental health issues, and had expressed no willingness to engage in remedial services for herself or her children. Respondent signed a DSS case plan agreeing to complete parenting classes and domestic violence counseling and comply with all recommendations, submit to a mental health and substance abuse assessment and comply with all recommendations, submit to random drug screens, and obtain and maintain stable employment and housing.

DSS filed a petition to terminate the parental rights of respondent, Jamie R.,

and Dallas W. on 19 February 2019. At the time, Dallas W. was incarcerated. None of the parents filed an answer to the termination petition. *See* N.C.G.S. § 7B-1107 (2019). After a series of continuances, the trial court convened a hearing on the termination petition on 21 August 2019. Counsel for DSS advised the trial court that it was proceeding only against respondent and Jamie R. and that it was not proceeding against Dallas W. at that time.

At the adjudicatory stage of the termination hearing, the trial court heard testimony from respondent, her DSS social worker, and Angela S., who had served as the children's foster care placement since their entry into DSS custody in March 2018. Respondent testified that she was unemployed, homeless, and using heroin daily, including on the morning of the termination hearing. She had been arrested five times since March 2018 and was awaiting trial on pending charges. Despite paying for her heroin habit, respondent had contributed nothing toward the children's cost of care while they were in DSS custody. Respondent acknowledged she was "unstable and unfit and that [she] need[ed] help." The trial court concluded there were grounds to terminate respondent's parental rights for neglect, failure to pay a reasonable portion of the children's cost of care, and dependency. N.C.G.S. § 7B-1111(a)(1), (3), (6) (2019). The trial court also found grounds to terminate the parental rights of Jamie R.

At the dispositional stage, the trial court received written reports from DSS and the children's guardian *ad litem* (GAL) and heard testimony from the social

worker and the GAL. In accordance with the recommendations of DSS and the GAL, the trial court concluded that terminating the parental rights of respondent and Jamie R. was in the best interests of their respective children. The trial court entered its written termination order on 12 September 2019. Respondent filed notice of appeal.[2]

Respondent does not challenge the grounds for termination adjudicated by the trial court under N.C.G.S. § 7B-1111(a), but argues that the trial court abused its discretion in concluding it was in the children's best interests that respondent's parental rights be terminated. "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *In re K.N.K.*, 374 N.C. 50, 57, 839 S.E.2d 735, 740 (2020) (quoting *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998)). The trial court's dispositional findings are binding on appeal if they are supported by any competent evidence. *Id.* We are likewise bound by all uncontested dispositional findings. *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019).

The dispositional stage of a proceeding to terminate parental rights is governed by N.C.G.S. § 7B-1110(a), which provides as follows:

> (a)    After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the

---

[2] There is no indication that Jamie R. appealed the termination order, and he is not a party to this appeal.

juvenile's best interest. . . . In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:

    (1)    The age of the juvenile.

    (2)    The likelihood of adoption of the juvenile.

    (3)    Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

    (4)    The bond between the juvenile and the parent.

    (5)    The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

    (6)    Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2019). Although the trial court must "consider" each of the statutory factors, *id.*, we have construed subsection (a) to require written findings only as to those factors for which there is conflicting evidence. *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 424 (2019).

The trial court's termination order expressly states that the trial court "considered all factors set out in N.C.G.S. [§] 7B-1110 in determining whether terminati[ng] the parental rights of [respondent] to her children" is in their best interests. The trial court made written findings about each of the criteria in N.C.G.S. § 7B-1110(a)(1)–(5) as follows:

    (A)    The age of the juveniles: [Zane] is 5 Years and 4 Months, [Henry] and [Isaac] are 7 Years and 11

Months, [Ethan] is 8 Years and 7 Months.

(B)     The likelihood of adoption of the juveniles: The juveniles' [foster] placement wants to adopt the juveniles. There is a high likelihood of adoption.

(C)     Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juveniles: The permanent plan for the juveniles is adoption. Termination of [respondent's] and Jamie R[.'s] parental rights will aid in [the] accomplishment of the permanent plan of adoption.

(D)     The bond between the juveniles and their parent: The juveniles do not have a good bond with [respondent]. [Respondent's] own action contributed to the court staying her visitation with the juveniles [on 22 August 2018]. The lack of visitation has affected the bond between the children and their mother.

(E)     . . . The quality of the relationship between the juveniles and the proposed adoptive parents: The juveniles and Angela S[.] and her family have a strong bond. The S[.'s] have tended to all of the juveniles' well-being needs. They have provided a safe, stable and loving home to the juveniles since being placed in the S[.] home around March of 2018. The S[.'s] intend to adopt the juveniles.

To the extent that respondent does not contest these findings, they are binding. *See*

*In re Z.L.W.*, 372 N.C. at 437, 831 S.E.2d at 65.

Specifically, respondent argues these findings fail to account for the fact that

DSS did not proceed against Dallas W. at the termination hearing, thereby leaving

intact his parental rights in Isaac, Henry, and Zane. Because Dallas W. retained his

parental rights in these children, respondent contends the evidence did not show a

high likelihood that they would be adopted or that terminating her parental rights would facilitate their adoption. Respondent did not raise Dallas W.'s parental rights or their impact on the prospects for adoption as an issue during the dispositional hearing.

The record shows only that DSS filed a petition to terminate his parental rights, but was not proceeding against him at the termination hearing.[3] The fact that Dallas W.'s parental rights remained in place at the time of the termination hearing does not render the trial court's findings under N.C.G.S. § 7B-1110(a)(2)–(3) erroneous. Subsection (a)(2) refers to the "likelihood"—not the certainty—of the children's adoption. N.C.G.S. § 7B-1110(a)(2). Similarly, subsection (a)(3) asks whether terminating respondent's parental rights would "*aid in the accomplishment of* the permanent plan for the juvenile[s]." N.C.G.S. § 7B-1110(a)(3) (emphasis added). Unquestionably, the termination of respondent's parental rights was a necessary precondition of the children's adoption.

Moreover, the DSS social worker attested to the high likelihood of the children's adoption and to the fact that terminating respondent's parental rights would aid in realizing the permanent plan of adoption. The social worker further

---

[3] The record on appeal includes a "Notice of Dismissal of Petit[io]n for Termination of Parental Rights" filed in the trial court by DSS on 11 October 2019. The notice of dismissal states that Dallas W. had relinquished his parental rights in Isaac, Henry, and Zane and that "the time for revocation has expired." It appears this document may not have been before the trial court at the time of the termination hearing on 21 August 2019.

advised the trial court that Dallas W. had made no effort to regain custody of his children and wanted Angela S. to adopt them. The GAL reported that Angela S. and her spouse "have gone through the licensing procedure to be able to adopt the children and have expressed a strong desire to do so." This competent evidence is sufficient to support the trial court's findings as to the likelihood of adoption. In the absence of an evidentiary conflict, the trial court is not required to make written findings under N.C.G.S. § 7B-1110(a)(6) on this issue. *See In re A.R.A.*, 373 N.C. at 199, 835 S.E.2d at 424.

Respondent makes a similar argument regarding the availability of her own maternal grandmother, Linda R., as a potential guardian for the children. Although the GAL's written report included a bare statement that Linda R. "has been approved for consideration of guardianship/adoption of the children, and the home has been approved by DSS," Linda R. is only mentioned once during the adjudicatory stage of the termination proceeding. We recognize the trial court may—and should—consider evidence introduced during the adjudicatory stage of a termination hearing in determining the children's best interests during the disposition stage. *See In re Pierce*, 356 N.C. 68, 71–72, 75–76, 565 S.E.2d 81, 84, 86 (2002); *In re M.A.I.B.K.*, 184 N.C. App. 218, 225, 645 S.E.2d 881, 886 (2007). Respondent, however, made no reference to Linda R. or any other alternative placement for the children at the disposition stage, during which the sole focus was upon identifying the best possible outcome for the children. *See* N.C.G.S. § 7B-1110(a)–(b); *see also In re Pierce*, 356 N.C. at 76, 565

S.E.2d at 86 (characterizing the "determination of best interests [a]s more in the nature of an inquisition" than an adversarial process).

Respondent testified only that her grandparents "want" her children and would allow respondent to "live with them once [she is] clean and once [she has] treatment and everything." Absent additional evidence regarding Linda R.'s willingness or ability to provide permanence for respondent's children, the trial court cannot be said to have erred even if, *arguendo*, it failed to consider Linda R. as a placement option. *Cf. In re S.D.C.*, 373 N.C. 285, 290, 837 S.E.2d 854, 858 (2020) (explaining "the extent to which it is appropriate" for the trial court to consider a relative placement for a child under N.C.G.S. § 7B-1110(a)(6) is "dependent upon the extent to which the record contains evidence tending to show whether such a relative placement is, in fact, available").

DSS and the GAL presented undisputed evidence that Angela S. and her husband had provided excellent care for respondent's four children since March 2018 and wished to provide them a permanent home through adoption. Because respondent did not present evidence about Linda R. to contradict the evidence that DSS and the GAL presented, the trial court was not obligated to make written findings about Linda R. under N.C.G.S. § 7B-1110(a)(6). *See In re A.R.A.*, 373 N.C. at 199, 835 S.E.2d at 424.

Finally, we hold that respondent has failed to show the trial court abused its

discretion under N.C.G.S. § 7B-1110(a) by concluding it was in the children's best interests to terminate her parental rights. The termination order reflects the trial court's consideration of the statutory dispositional factors. Its findings are supported by the evidence. Its assessment of the children's best interests arises rationally from its findings of fact and is consistent with the recommendation of the children's GAL. Accordingly, we affirm.

AFFIRMED.