IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-141

No. 366A20

Filed 5 November 2021

IN THE MATTER OF: N.C.E. and N.D.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 29 April 2020 by Judge Meader W. Harriss III in District Court, Pasquotank County. This matter was calendared for argument in the Supreme Court on 30 September 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Frank P. Hiner IV for petitioner-appellee Pasquotank County Department of Social Services.*

*Chelsea K. Barnes for appellee Guardian ad Litem.*

*Robert W. Ewing for respondent-appellant mother.*

HUDSON, Justice.

¶ 1    Respondent-mother appeals from the trial court's orders terminating her parental rights to N.C.E. (Nathan) and N.D.C. (Nick).[1] Because we hold the trial court did not abuse its discretion by concluding that it was in Nathan's and Nick's best interests to terminate respondent-mother's parental rights, we affirm the trial court's orders.

---

[1] Pseudonyms are used to protect the identity of the juveniles.

## I. Factual and Procedural Background

During a thunderstorm on the evening of 18 August 2018, respondent-mother left then twenty-month-old Nathan on the front porch of the maternal grandmother's temporary residence. After leaving, respondent-mother called the maternal grandmother to let her know that Nathan was on the porch and that respondent-mother would be back to pick him up in the morning. The maternal grandmother reported this incident to the Elizabeth City Police Department.

A law enforcement officer and a social worker with the Pasquotank County Department of Social Services (DSS) responded to the maternal grandmother's residence. The maternal grandmother was unable to provide respondent-mother's location or the location of Nathan's younger brother, Nick, and respondent-mother did not respond to attempts to contact her. The social worker initiated a Child Protective Services investigation and determined that neither the maternal grandmother nor the children's maternal aunt (with whom the maternal grandmother was residing) were willing or able to provide care for Nathan on an ongoing basis.

On 20 August 2018, after learning that DSS had opened an investigation, Nick's purported paternal grandmother brought him to DSS. The purported paternal grandmother stated that she often cared for Nick. The next day, respondent-mother and Nick's purported paternal grandmother reported to DSS along with several other

parties. A domestic incident occurred at the agency which resulted in a law enforcement officer taking respondent-mother into custody, whereupon she requested that DSS take custody of Nathan and Nick.

On 22 August 2018, DSS filed separate juvenile petitions in District Court, Pasquotank County, alleging that Nathan and Nick were neglected and dependent juveniles. On 17 October 2018, the trial court entered an adjudication order concluding that Nathan and Nick were neglected and dependent juveniles. *See* N.C.G.S. § 7B-101(9), (15) (2019). In a disposition order entered the same day, the trial court ordered that respondent-mother participate in a Parenting Capacity Evaluation and follow all recommendations, participate in outpatient mental health counseling/therapy addressing anger management and parenting education, secure employment and stable independent housing, keep all scheduled visitations with her children, maintain weekly contact with DSS regarding her whereabouts, and meet with a social worker monthly. The trial court allowed respondent-mother two hours of weekly supervised visitation with the children. The trial court granted DSS custody and placement authority over the children and ordered DSS to place the children in a licensed foster home or other court-approved placement.

On 18 December 2018, the matter came on for a ninety-day review hearing. In the resulting order entered on 30 January 2019, the trial court ordered that DSS continue to provide for and arrange placement of the children in a licensed foster

home or any other home approved by the court.

¶ 7 On 24 May 2019, the trial court entered a permanency-planning order. The trial court set the permanent plan for the children as reunification with a concurrent plan of custody with a relative or court-approved caretaker. The trial court also ordered that if respondent-mother "ha[d] not done the items ordered [by the next review hearing], [DSS] shall recommend changing the permanent plan to adoption." The matter came on for review on 27 August 2019. In its 10 October 2019 permanency-planning order, the trial court set the permanent plan for the children as adoption and the concurrent plan as reunification. The trial court ordered DSS to file a petition to terminate respondent-mother's parental rights.

¶ 8 On 3 December 2019, DSS filed separate petitions for termination of respondent-mother's parental rights in Nathan and Nick. With respect to each child, DSS alleged that respondent-mother had neglected the children within the meaning of N.C.G.S. § 7B-1111(a)(1); willfully left the children in foster care or placement outside the home for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting those conditions which led to the children's removal within the meaning of N.C.G.S. § 7B-1111(a)(2); and for a continuous period of six months next preceding the filing of the petition to terminate her parental rights, willfully failed to pay a reasonable portion of the children's cost of care in DSS custody although physically

and financially able to do so within the meaning of N.C.G.S. § 7B-1111(a)(3).

On 11 March 2020, the trial court conducted an adjudication hearing on DSS's petitions to terminate respondent-mother's parental rights in Nathan and Nick. On 29 April 2020, the trial court entered orders adjudicating grounds for termination of respondent-mother's parental rights and concluded that as alleged by DSS, grounds existed under N.C.G.S. § 7B-1111(a)(1), (2), and (3).

On 23 March 2020, the trial court conducted a disposition hearing. It concluded that termination of respondent-mother's parental rights was in the best interests of Nathan and Nick. Accordingly, in orders entered 29 April 2020, the trial court terminated respondent-mother's parental rights in both children. Respondent-mother appeals.

## II. Analysis

Respondent-mother does not contest the trial court's adjudication of grounds to terminate her parental rights under N.C.G.S. § 7B-1111(a)(1)–(3). She confines her appeal to challenging the trial court's dispositional determination under N.C.G.S. § 7B-1110(a), that it was in the children's best interests to terminate her parental rights.

At the disposition stage of a termination-of-parental-rights proceeding, the trial court must "determine whether terminating the parent's rights is in the

juvenile's best interest[s]." N.C.G.S. § 7B-1110(a) (2019). In making its determination,

> [t]he court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* "Although the trial court must consider each of the factors in N.C.G.S. § 7B-1110(a), written findings of fact are required only 'if there is conflicting evidence concerning the factor, such that it is placed in issue by virtue of the evidence presented before the district court.' " *In re G.G.M.*, 377 N.C. 29, 2021-NCSC-25, ¶ 22 (quoting *In re A.R.A.*, 373 N.C. 190, 199 (2019)).

"The trial court's dispositional findings of fact are reviewed under a 'competent evidence' standard." *In re A.J.T.*, 374 N.C. 504, 508 (2020) (quoting *In re K.N.K.*, 374

N.C. 50, 57 (2020)). "We are likewise bound by all uncontested dispositional findings." *In re E.F.*, 375 N.C. 88, 91 (2020) (citing *In re Z.L.W.*, 372 N.C. 432, 437 (2019)). We review a trial court's assessment of a juvenile's best interests only for abuse of discretion. *In re A.R.A.*, 373 N.C. at 199. "Under this standard, we defer to the trial court's decision unless it is 'manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.' " *In re J.J.B.*, 374 N.C. 787, 791 (2020) (quoting *In re Z.A.M.*, 374 N.C. 88, 100 (2020)).

¶ 14 As an initial matter, we note the trial court entered separate disposition orders for Nathan and Nick, with substantially similar, if not identical, findings of fact. In addressing respondent-mother's challenges to specific findings of fact, we will quote from the "Disposition Order for Termination of Parental Rights" in Nathan's case.

¶ 15 In both of its disposition orders, the trial court made findings of fact correlating to each of the statutory criteria in N.C.G.S. § 7B-1110(a)(1)–(5). Addressing N.C.G.S. § 7B-1110(a)(1) and (2), the trial court noted Nathan's and Nick's ages and found the likelihood of their adoption "extremely high" due to their ages, health, and personalities. Addressing N.C.G.S. § 7B-1110(a)(3), the trial court found that termination of parental rights was necessary to accomplish the permanent plan of adoption. Addressing N.C.G.S. § 7B-1110(a)(4), the trial court found that "no bond" existed between respondent-mother and either child. Addressing N.C.G.S. § 7B-1110(a)(5), the trial court found that because neither child was in an adoptive

placement, "there [was] no information on the quality of the relationship between [the children] and the proposed adoptive parent[s]." As respondent-mother does not challenge these findings, they are binding on appeal. *See In re E.F.*, 375 N.C. at 91.

**A. Sufficiency of findings under N.C.G.S. § 7B-1110(a)(5)**

¶ 16　　　Respondent-mother first argues that the trial court failed to make additional findings of fact required by N.C.G.S. § 7B-1110(a)(5) to address the quality of the relationship between the children and the permanent placements proposed by respondent-mother, specifically the children's maternal grandmother and maternal great-grandparents.

¶ 17　　　Although respondent-mother did not attend the disposition hearing, the transcript and the trial court's findings show that the maternal grandmother testified and offered herself as a permanent placement for the children. However, the record provides no indication that the maternal great-grandparents were proposed as a placement option during the termination proceedings. Moreover, while the maternal grandmother sought to be considered as a permanent placement, a review of the record reveals no conflict in the evidence regarding the quality of her relationship with Nathan or Nick. Therefore, the trial court did not err by failing to make written findings on this issue under N.C.G.S. § 7B-1110(a)(5). *See In re A.R.A.*, 373 N.C. at 199.

**B. Accuracy of findings under N.C.G.S. § 7B-1110(a)(6)**

¶ 18 Respondent-mother next argues that "the trial court's findings of fact which held the maternal great-grandparents and maternal grandmother were not appropriate placement providers for the children were not supported by . . . competent evidence." She further contends that "[t]he competent evidence supports a finding that the children's placement with the maternal great grandparents and the maternal grandmother [is] appropriate."

¶ 19 Although the availability of a relative placement is not among the specific dispositional factors set forth in N.C.G.S. § 7B-1110(a)(1)–(5), we have held the trial court "may treat the availability of a relative placement as a 'relevant consideration' " under N.C.G.S. § 7B-1110(a)(6). *In re S.D.C.*, 373 N.C. 285, 290 (2020). "[T]he extent to which it is appropriate to do so in any particular proceeding [is] dependent upon the extent to which the record contains evidence tending to show whether such a relative placement is, in fact, available." *Id.*

¶ 20 Here, respondent-mother challenges the following findings as unsupported by the evidence: the trial court had previously denied respondent-mother's request to place the children with the maternal great-grandparents at the ninety-day review hearing on 18 December 2018; the maternal grandmother believed respondent-mother was a "good mother" and blamed others for the children being in DSS custody;

and the trial court received "scant evidence" about the quality of care the children would receive if placed with their maternal relatives.

¶ 21     With regard to the finding that the trial court had declined to place the children with the maternal great-grandparents at the ninety-day review hearing, DSS Social Worker Dale Corbin testified during the termination hearing about the assessment conducted with the maternal great-grandparents as a potential placement option. At the time of the initial kinship assessment on 29 August 2018, the maternal great-grandparents' 48-year-old son, who has a "criminal background," was living in the home. DSS's concerns are also reflected in the trial court's findings in the 30 January 2019 ninety-day review order.[2] The maternal great-grandparents made the following disclosures to Social Worker Corbin at a meeting on 29 November 2018:

> [The maternal great-grandmother] stated they could not have the children placed in their home as neither she nor her husband were capable of caring for the children, given [Nathan] being a very active child and needing to be watched constantly. [The maternal great-grandparents] advised they know what would happen if the children were placed with them citing that neither [respondent-mother] nor their maternal grandmother . . . would do anything. [The maternal great-grandmother] stated that neither [the maternal grandmother] nor [respondent-mother] "want the children" and were not going to do what they are supposed to do to get the children back. . . . Further, [the maternal great-grandmother] advised the children would just be left with them and they could not care for them full time. [She] stated she feels better knowing the children are currently

---

[2] The trial court took judicial notice of all orders entered in the underlying juvenile proceedings.

being cared for and are safe where they were.

The trial court also found that the maternal great-grandmother had contacted Social Worker Corbin on 3 December 2018 in an attempt to disavow these statements, explaining that respondent-mother and the maternal grandmother "were very upset and angry with her and [the maternal great-grandfather] for telling Social Worker Corbin that they could not care for the children" and claiming that "she and her husband wanted the children brought to her home to stay." However, Social Worker Corbin believed the maternal great-grandparents had been "upfront, honest and not hesitant in advising of their situation" on 29 November 2018.

¶ 22        Although the ninety-day review order did not expressly reject the maternal great-grandparents' request to serve as a placement for Nathan and Nick, the order maintained the children in DSS custody and directed DSS to continue to arrange for their placement "in a licensed foster home or . . . any other home or facility approved by the Court." Given the order's findings and Social Worker Corbin's testimony at the disposition hearing, one could reasonably infer that the trial court had deliberately chosen not to place the children with the maternal great-grandparents at the prior hearing in December 2018. We further conclude that any error in this dispositional finding is harmless, inasmuch as the maternal great-grandparents were not proposed as a placement option for the children at the time of the termination hearing. *See In re E.F.*, 375 N.C. at 94.

¶ 23 The trial court's findings that the maternal grandmother believed respondent-mother to be a "good mother" and assigned blame "to everyone except her daughter" are fully supported by the maternal grandmother's testimony at the disposition hearing. Respondent-mother argues the trial court's findings misconstrue this testimony, noting the maternal grandmother's qualification that she did not agree with the way respondent-mother had been "handling things" and that respondent-mother is a good mother in "some aspects." However, the transcript reflects the maternal grandmother testified that "[w]hen I say she's a good mother, she loves her children. She—she was never abusive to them or, you know, anything that would rule you out as a good mother. She just was a good mother in general."

¶ 24 As for the maternal grandmother assigning blame to people other than respondent-mother for the children remaining in DSS custody, the maternal grandmother testified that the children's relatives had asked DSS to be a kinship placement for the children but were refused "because of little things . . . little stuff" despite her assurance to Social Worker Corbin that "whatever h[e] and DSS needed us to do we would do it." The maternal grandmother repeatedly expressed her frustration that respondent-mother and her family were being held to an unrealistic standard of perfection in being denied custody of the children. She characterized the court proceedings as "a mess[,]" "ridiculous[,]"and "unnecessary[,]" and insisted the children should be with their family rather than in foster care. While acknowledging

she had disapproved of respondent-mother's past behavior, the maternal grandmother explained that

> her problem—her issue is is that she's young and some of the things that she wanted to do were just not appropriate for you having two children at the time. Some things that I didn't agree with. Maybe hanging out a little bit and things like that and I'm having to babysit. Things that can be fixed. Nothing like she was abusive or—or on drugs or anything out of the way like that.

Because the trial court's findings fairly characterize the maternal grandmother's testimony, we overrule respondent-mother's challenge. *See In re A.J.T.*, 374 N.C. at 508.

¶ 25     Competent evidence also supports the trial court's findings that it received "scant" evidence about the quality of care that the maternal grandmother could provide the children. In contesting these findings, respondent-mother asserts the trial court previously found the maternal grandmother's home to be a "perfect" placement for Nathan in its initial disposition order entered following the children's adjudication as neglected and dependent juveniles in October 2018. Having reviewed the trial court's 17 October 2018 disposition order we find respondent-mother's argument unpersuasive.

¶ 26     The finding cited by respondent-mother states as follows:

> 32. [The maternal grandmother] testified that she called [DSS] and reported her daughter because . . . [she] was not taking her parenting seriously. . . . [The maternal grandmother] believes [respondent-mother] gets the

> seriousness of it now. In the past [the maternal grandmother] has been a placement provider for the children. [Nathan] has always been with her and [maternal grandmother] can handle [Nathan]'s behavioral problems. [*The maternal grandmother*]'s *home is the perfect place for* [*Nathan*] *to be placed*. [The maternal grandmother] wants both of the children out of foster care and placed with her and/or her mother[, the maternal great-grandmother].

Fairly construed, this finding merely summarizes the maternal grandmother's testimony and does not reflect the trial court's own assessment that her residence is "perfect" for Nathan. As respondent-mother does not direct our attention to any other evidence probative of the quality of care the maternal grandmother could provide the children, we reject respondent-mother's challenge to the trial court's findings of "scant" evidence on the subject. *See In re A.J.T.*, 374 N.C. at 508.

¶ 27    To the extent respondent-mother separately contends there is competent evidence to support a finding that the maternal grandmother or maternal great-grandmother would be an appropriate placement for the children, we find no merit to her contention. "Although the question of the sufficiency of the evidence to support the findings may be raised on appeal, our appellate courts are bound by the trial courts' findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery*, 311 N.C. 101, 110–11 (1984) (citation omitted).

¶ 28    The trial court heard no evidence the maternal great-grandmother was willing or able to provide a permanent home for the children. *See In re E.F.*, 375 N.C. at 94.

Moreover, although the maternal grandmother testified about her own willingness and ability to care for the children, it was the trial court's role as fact-finder "to pass upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *In re A.R.A.,* 373 N.C. at 196 (cleaned up). The trial court expressly found that

> It would not be in the best interest of the minor child[ren] to be placed with either [the maternal grandmother] or [the maternal aunt]. The Court was able to observe them during their testimony and hear the tone in which they spoke. They both believe that [respondent-mother] is a good mother in spite of the facts made known in the termination of parental rights proceeding, the fact that [respondent-mother] was not at the hearing, and the fact that her child[ren do] not have a bond with her. Amongst other things, this Court is concerned with their judgment and especially their ability to provide a safe and nurturing environment for [the children], especially at [their] tender age[s].

Respondent-mother's exception is overruled.

## C. The best interests determination under N.C.G.S. § 7B-1110(a)

Finally, respondent-mother claims the trial court abused its discretion by concluding it was in Nathan's and Nick's best interests to terminate her parental rights. She contends the trial court failed to follow a statutory preference for placing children with relatives over non-relatives when children are removed from the parent's home. Respondent-mother cites N.C.G.S. §§ 7B-900 and 7B-903(a1) under Article 9, which governs dispositions in abuse, neglect, and dependency proceedings,

as an example of this preference. *See In re S.D.C.*, 373 N.C. at 290 (citing N.C.G.S. §§ 7B-903(a1) and 7B-906.1(e)(2) for the proposition that "[a] trial court is required to consider whether a relative placement is available for a juvenile in deciding the issues raised in an abuse, neglect, and dependency proceeding"). *But cf. id.* ("[T]he trial court is not expressly directed to consider the availability of a relative placement in the course of deciding a termination of parental rights proceeding . . . ."). Respondent-mother further notes that custody with a relative or court-approved caretaker was designated as the children's concurrent permanent plan throughout the underlying juvenile proceedings. Because "[t]he trial court did not adequately evaluate the appropriateness of [the] maternal relatives' placement" proposed by [the] maternal grandmother at the termination hearing, respondent-mother argues the court "failed to make [a] reasoned decision" about the children's best interests.

¶ 30        It is true that Article 9 of the Juvenile Code—which governs dispositions entered in ongoing juvenile abuse, neglect, and dependency proceedings—provides that a juvenile receiving out-of-home care should be placed with a suitable relative when such a placement is available, "unless the court finds that the placement is contrary to the best interests of the juvenile." N.C.G.S. § 7B-903(a1) (2019). However, "[a] termination proceeding is separate and distinct from an underlying adjudication proceeding" and is governed by the statutes in Article 11. *In re A.S.M.R.*, 375 N.C. 539, 542 (2020). Article 11's dispositional statute, N.C.G.S. § 7B-1110, gives no

priority to relative placements, focusing solely upon identifying the best interests of the child. *See* N.C.G.S. § 7B-1110(a)–(b). While the availability of an appropriate relative placement may be a "relevant consideration" under N.C.G.S. § 7B-1110(a)(6), *In re S.D.C.*, 373 N.C. at 290, it is left to the trial court's discretion to weigh the various competing factors in N.C.G.S. § 7B-1110(a) in arriving at its determination of the child's best interests. *See In re J.J.B.*, 374 N.C. at 795 (explaining that "the bond between parent and child is just one of the factors to be considered under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give greater weight to other factors" (quoting *In re Z.L.W.*, 372 N.C. at 437)).

¶ 31 The court's unchallenged findings of fact show DSS had contacted and assessed fourteen potential relative placements during the course of the underlying proceedings but found none to be acceptable. As discussed above, the trial court acknowledged the maternal grandmother's request that the children be placed with her but made findings explaining why such a placement would be inappropriate and contrary to the children's best interests. While the court "d[id] find value in placing a child with relatives[,]" the court concluded, based on the evidence before it, that freeing Nathan and Nick for adoption would afford them "the greatest opportunity to be nurtured, loved, and cared for in a safe and stable environment" and "to reach [the] full development of [their] physical, mental, emotional, moral and spiritual faculties."

Because the trial court made sufficient dispositional findings of fact under N.C.G.S. § 7B-1110(a)(1)–(5) and provided a reasoned explanation of its weighing of the statutory factors, we hold that the trial court did not abuse its discretion by concluding that termination of respondent-mother's parental rights in Nathan and Nick was in the children's best interests. *See In re J.J.B.*, 374 N.C. at 791. Accordingly, the trial court's orders are affirmed.

AFFIRMED.