IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-39

No. 301A21

Filed 18 March 2022

IN THE MATTER OF: K.N.L.P., T.L.S.P., and R.W.P.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 13 May 2021 by Judge Emily G. Cowan in District Court, Henderson County. This matter was calendared for argument in the Supreme Court on 18 February 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Sara H. Player for petitioner-appellee Henderson County Department of Social Services.*

*Sloan L. E. Carpenter and C. Kyle Musgrove for appellee Guardian ad Litem.*

*Edward Eldred for respondent-appellant father.*

BARRINGER, Justice.

¶ 1     Respondent appeals from an order terminating his parental rights to three of his children. However, respondent has only presented arguments concerning the

termination of parental rights as to R.W.P. (Rob).[1] After careful review, we affirm the trial court's order.

## I. Background

¶ 2 In August 2019, a physical altercation occurred between Rob's mother's[2] boyfriend and Rob's half-brother, resulting in the involvement of law enforcement. Rob and his two siblings had been subject to continued exposure to methamphetamine, and they tested positive for methamphetamine a few weeks after the altercation. Shortly thereafter, the Henderson County Department of Social Services (DSS) filed a juvenile petition alleging that Rob and his two siblings were neglected juveniles. Pursuant to court order, DSS then took nonsecure custody of the three children.

¶ 3 At the time of DSS's intervention, the mother cared for the children, and the paternity of Rob was uncertain. Rob's birth certificate did not list a legal father. Respondent was incarcerated during the fall of 2019 and had been for two years. In August 2017, a jury convicted respondent of possession of a schedule II controlled substance, and in March 2019, respondent was convicted of possession of a controlled substance on the premises of a penal institution.

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identities and for ease of reading.

[2] Rob's biological mother is not a party to this appeal.

¶ 4 On 21 November 2019, the trial court filed a consent adjudication order, which found Rob and his two siblings to be neglected juveniles. Then, on 13 December 2019, respondent was released from prison. Subsequently, respondent submitted to genetic testing, which determined that the probability of paternity was 99.9%. The trial court then entered an order establishing that respondent is the paternal father of Rob.

¶ 5 Despite being required under his case plan to submit to random drug screens, respondent refused to submit to most of the requested drug screens throughout the course of the proceedings. On two occasions, he admitted to the social worker that his drug screens, if completed, would be positive for marijuana. Respondent's lack of contact with DSS from November 2020 to March 2021 further prevented additional drug screens. Since respondent did not provide the necessary drug screens, respondent did not successfully complete the substance abuse intensive outpatient program also required by his case plan. Respondent further did not report any substance abuse or mental health treatment after August 2020. Thus, the trial court found that respondent had failed to correct the conditions that led to the juveniles' removal from the home.

¶ 6 On 5 January 2021, DSS filed a motion to terminate respondent's and the mother's parental rights to all three children. Following a hearing on 8 April 2021, the trial court found that grounds existed for termination of respondent's and the mother's parental rights to all three children for neglect, N.C.G.S. § 7B-1111(a)(1)

(2021), and failure to make reasonable progress, N.C.G.S. § 7B-1111(a)(2), and that such termination of respondent's and the mother's parental rights was in the children's best interests.

¶ 7 Respondent appealed. On appeal, respondent does not challenge the trial court's conclusion that grounds for termination existed under N.C.G.S. § 7B-1111(a) or any findings of fact supporting this conclusion. Rather, respondent alleges that the trial court abused its discretion in its best interests determination as to Rob.

## II. Analysis

¶ 8 A termination-of-parental-rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109 to -1110 (2021). At the adjudicatory stage, the trial court "adjudicate[s] the existence or nonexistence of any of the circumstances set forth in [N.C.]G.S. [§] 7B-1111 which authorize the termination of parental rights of the respondent." N.C.G.S. § 7B-1109(e). If the trial court adjudicates that one or more grounds for terminating a parent's rights exist, the trial court proceeds to the dispositional stage where it determines "whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a).

¶ 9 When reviewing a trial court's actions at the dispositional stage, appellate courts review the trial court's assessment of a juvenile's best interests solely for an abuse of discretion. *In re S.D.C.*, 373 N.C. 285, 290 (2020). "Under this standard, we defer to the trial court's decision unless it is manifestly unsupported by reason or one

so arbitrary that it could not have been the result of a reasoned decision." *In re A.K.O.*, 375 N.C. 698, 701 (2020) (cleaned up).

¶ 10 When assessing whether termination of a parent's rights is in a juvenile's best interests, "[t]he [trial] court may consider any evidence, including hearsay evidence as defined in [N.C.]G.S. [§] 8C-1, Rule 801, that the [trial] court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile." N.C.G.S. § 7B-1110(a). Further, the trial court considers the following criteria and makes written findings regarding those that are relevant:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a).

¶ 11 The trial court's dispositional findings are binding on appeal if supported by the evidence received during the termination hearing or not specifically challenged

on appeal.[3] *In re S.C.C.*, 379 N.C. 303, 2021-NCSC-144, ¶ 22.

¶ 12     Here, the trial court concluded that termination of respondent's parental rights was in the best interests of all three children and made the following dispositional findings of fact:

1.  The juvenile [Tom] is thirteen (13), the juvenile [Kate] is twelve (12), and the juvenile [Rob] is ten (10).

2.  The father has never been the primary caretaker for the juveniles. He had a friendship with the neighbor of the family and would see the juveniles but was not involved in their upbringing. The juveniles were primarily raised by the mother and the maternal grandmother, who has since passed away.

3.  All three juveniles love their parents and identify their biological parents as their parents. [Tom] and [Kate] have a bond with their parents but the parents' long-term substance abuse issues have affected the juveniles' relationship with their parents. Both [Tom] and [Kate] are more attached to their mother but worry a lot about both parents. [Rob] has more of an attachment to the mother than [Tom] or [Kate].

---

[3] In past cases, we have used the term "competent evidence" when describing the standard of review applicable to the dispositional findings of fact in a termination-of-parental-rights order. *See, e.g.*, *In re K.N.K.*, 374 N.C. 50, 57 (2020). In some contexts, competent evidence means admissible evidence pursuant to the rules of evidence. *See Evidence*, *Black's Law Dictionary* (11th ed. 2019). However, N.C.G.S. § 7B-1110(a) makes clear that the evidence that the trial court receives and considers when determining the best interests of the juvenile need not be admissible under the North Carolina Rules of Evidence. Further, our precedent and the Rules of Appellate Procedure dictate when we can review the admissibility of evidence admitted by the trial court. Accordingly, for clarity, we are avoiding the phrase "competent evidence" in the context of determinations of a juvenile's best interests in termination-of-parental-rights orders in favor of using the language the statute itself employs: "evidence."

4. All of the juveniles have struggled with what they want and have expressed a desire to go home but only if the parents could be sober and provide a safe home. They have grown and matured since being in foster care and are able to see what a stable home looks like and are able to enjoy their childhood. The older juveniles are doing well academically and are involved in extracurricular activities.

5. The juvenile [Rob's] behavioral issues have improved significantly since coming [in]to [DSS] custody. He is now receiving regular therapy to address trauma from his life before foster care, as are his siblings.

6. The likelihood of the juveniles' adoption is high, particularly for [Tom] and [Kate] who are in a kinship placement that is a pre-adoptive home. [Rob] has been in his therapeutic foster home since December 2020 but that foster family adopted another ten-year-old child so [DSS] is hopeful that [Rob] may be adopted also. All three juveniles have indicated a desire to be adopted.

7. This [c]ourt has previously adopted a permanency plan of adoption for these juveniles, and termination of the parental rights as ordered herein will aid in the accomplishment of this plan.

8. The juveniles [Tom] and [Kate] have a strong and loving bond with the [foster] family and are very attached to the couple. The couple has been meeting the needs of the juveniles, involving the juveniles in activities, and helping them with their schoolwork. The older juveniles take pride in their schoolwork now.

¶ 13     Respondent concedes that dispositional findings of fact one, four, seven, and

eight are supported by evidence before the trial court but challenges in part dispositional findings two, three, five, and six as they relate to Rob. DSS and the guardian ad litem disagree, arguing that evidence supports the four dispositional findings of fact.

### A. Dispositional Finding of Fact Number Two

¶ 14        As to dispositional finding of fact number two, respondent objects to the definitiveness of the trial court's finding that respondent was *never* the primary caretaker and was *not* involved in Rob's upbringing. However, as acknowledged by respondent, one of the social workers testified that respondent "hasn't been a primary caretaker of the children." That social worker also testified that the children had "been raised by their mom and their maternal grandmother the majority of their lives." While the social worker clarified that her statement was based on her own knowledge and that respondent saw the kids "a lot" because respondent had a relative living next door to the maternal grandmother, the social worker's testimony is evidence supporting the trial court's dispositional finding of fact. When there is evidence to support the trial court's dispositional finding, the finding is binding on this Court. *In re S.C.C.*, ¶ 22. It is the duty of the trial court—not an appellate court— to determine the weight and veracity of the evidence and the reasonable inferences to be drawn therefrom. *In re A.R.A.*, 373 N.C. 190, 196 (2019). Therefore, we hold that dispositional finding of fact number two is supported by the evidence.

**B. Dispositional Finding of Fact Number Three**

Next, respondent argues "there is no evidence to support the *sub silentio* finding that Rob does not have a bond with [respondent]." (Emphasis added.) Yet a *sub silentio* finding is an unexpressed finding. *See Sub Silentio*, *Black's Law Dictionary* (11th ed. 2019). The trial court's order does not contain a dispositional finding of fact that Rob does not have a bond with respondent. Instead, the binding, unchallenged part of finding of fact three addressing the bond between Rob and respondent is that he loves his parents and identifies his biological parents as his parents. Thus, there is no dispositional finding of fact for this Court to review as it relates to this argument, but we are bound to the trial court's finding concerning Rob and respondent's bond, specifically that Rob loves respondent and identifies respondent as his parent. *Cf. In re A.R.A.*, 373 N.C. at 199 (recognizing that a trial court need not make a finding concerning a factor that is not placed at issue by virtue of conflicting evidence presented to the trial court).

Similarly, respondent argues "there was no evidence to support a finding that substance [ab]use affected [respondent's] relationship *with Rob*, to the exten[t] the trial court even made that finding." Here, as well, respondent challenges a finding that does not exist in the termination-of-parental-rights order. The trial court found that "[Rob's older siblings, Tom and Kate,] have a bond with their parents[,] but the parents' long-term substance abuse issues have affected the juveniles' relationship

with their parents." Thus, there is no dispositional finding of fact for this Court to review as it relates to this argument.

## C. Dispositional Finding of Fact Number Five

¶ 17 Respondent then contests the finding that Rob's behavioral issues "have improved significantly since coming [in]to [DSS] custody." However, as identified by DSS and the guardian ad litem, the evidence and unchallenged adjudicatory findings of fact support a finding of significant improvement.

¶ 18 When Rob came into DSS custody, he was nine, had aggressive and violent tendencies, and had been suspended from school and riding the bus. He was diagnosed with attention deficit hyperactivity disorder. While Rob was initially placed with his siblings at his aunt and uncle's home, his aunt and uncle could not meet Rob's needs as they had a two-year-old child, and the aunt was pregnant with twins.

¶ 19 Thereafter, Rob was placed with a distant maternal cousin, who was a special education teacher. This cousin helped Rob make significant progress with his behaviors. However, due to a family member needing hospice care in the cousin's home, the cousin could not continue to care for Rob. Thus, Rob was moved to a foster family.

¶ 20 Thereafter, Rob was moved to a therapeutic foster home, where he received trauma-focused therapy. When asked whether Rob's behavior stabilized after being

transferred to a therapeutic foster home, one of the social workers answered in the affirmative. The social worker explained that the first couple of months went really well and that most of Rob's behavioral issues have been school related. Rob also got along well with a ten-year-old child at his therapeutic foster home. Additionally, Rob had not been suspended from school since he came into foster care. Given this evidence, the trial court could find that Rob's behavioral issues "have improved significantly since coming [in]to [DSS] custody." *See In re D.W.P.*, 373 N.C. 327, 330 (2020) ("The trial judge's decisions as to the weight and credibility of the evidence, and the inferences drawn from the evidence are not subject to appellate review.").

¶ 21     Respondent also challenges the finding that Rob's therapy addressed "trauma from his life before foster care" when there was only testimony that Rob's therapy switched to being "more trauma-focused." We agree that the testimony in the record does not expressly reflect that his therapy addressed trauma from his life before foster care, but this is a reasonable inference by the trial court based on the evidence it received at the termination-of-parental-rights hearing. The unchallenged adjudicatory findings of fact reflect Rob's continued exposure to methamphetamine when in the care of his mother, which resulted in him testing positive for methamphetamine in 2019; that a physical altercation occurred between Rob's half-brother and his mother's boyfriend; and the absence of respondent due to his

incarceration for felony drug convictions. Therefore, in light of the evidence before the trial court, we are bound to this finding and cannot disturb it on appeal.

### D. Dispositional Finding of Fact Number Six

¶ 22          Respondent further argues that there is no evidence supporting the finding that the likelihood of adoption for Rob was high. Respondent argues that this finding is flatly contradicted by the social worker's testimony that to her knowledge the therapeutic foster family had not expressed an interest in adopting Rob and that there was no proposed adoptive placement.

¶ 23          However, DSS argues that respondent overlooks other testimony from the social worker. The social worker identified that Rob's paternal grandmother had expressed interest in having Rob stay with her, a home study of the paternal grandmother's home had been requested, and Rob's paternal grandmother would be able to apply to adopt Rob. Additionally, based on the social worker's testimony, the trial court found that "[Rob] has been in his therapeutic foster home since December 2020 but that foster family adopted another ten-year-old child so [DSS] is hopeful that [Rob] may be adopted also." Respondent has not challenged this finding. Thus, there is evidence supporting the trial court's finding that the likelihood of Rob's adoption is high. "[F]indings of fact are binding 'where there is some evidence to support those findings, even though the evidence might sustain findings to the

contrary.' " *In re R.D.*, 376 N.C. 244, 258 (2020) (quoting *In re Montgomery*, 311 N.C. 101, 110–11 (1984)).

¶ 24    Finally, while conceding that there is testimony from the social worker affirmatively answering yes to the question of whether "[Rob has] expressed whether he would like to be adopted recently," respondent contends it cannot support the finding by the trial court that Rob "indicated a desire to be adopted." We disagree. The trial court does not have to adopt verbatim the wording of the testifier; instead, the finding needs to be supported by evidence. Here, the social worker's testimony is evidence supporting the trial court's dispositional finding.

### E. Abuse of Discretion

¶ 25    Respondent concludes by arguing that the trial court abused its discretion in making its best interests determination as to Rob because the trial court relied on two dispositional findings of fact that were not supported by the evidence. Specifically, respondent cites the implied finding that Rob was not bonded with respondent and the finding that Rob was likely to be adopted. However, we have rejected the arguments concerning these dispositional findings. Evidence supported the finding that Rob's likelihood of adoption was high, and the trial court found, and respondent has not challenged, that Rob loved respondent and identified respondent as his parent. Thus, these dispositional findings of fact relating to Rob's bond with respondent and his likelihood of adoption are binding on this Court.

We also have repeatedly recognized that "the bond between parent and child is just one of the factors to be considered under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give greater weight to other factors." *In re Z.L.W.*, 372 N.C. 432, 437 (2019); *see also, e.g.*, *In re A.M.*, 377 N.C. 220, 2021-NCSC-42, ¶ 30. The fact that Rob loved respondent and identified respondent as his parent does not render the trial court's determination that termination of respondent's parental rights was in Rob's best interests an abuse of discretion.

Additionally, while, in this matter, the trial court found as supported by the evidence that the likelihood of adoption was high, we have recognized that "[t]he trial court is not required to find a likelihood of adoption in order for termination to be in a child's best interests." *In re G.G.M.*, 377 N.C. 29, 2021-NCSC-25, ¶ 25.

Here, the trial court's order reflects that it considered the statutory factors identified in N.C.G.S. § 7B-1110(a) when reaching its conclusion that terminating respondent's parental rights was in Rob's best interests and performed a reasoned analysis to reach this conclusion. *See In re Z.A.M.*, 374 N.C. 88, 101 (2020). Respondent has not shown that the trial court's conclusion is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. Thus, we cannot conclude that the trial court abused its discretion by concluding that termination of respondent's parental rights was in Rob's best interests.

### III.     Conclusion

The trial court did not abuse its discretion by concluding that termination of respondent's parental rights was in Rob's best interests. Accordingly, we affirm the trial court's order terminating respondent's parental rights to his children.

AFFIRMED.