IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-152

No. 55A21

Filed 17 December 2021

IN THE MATTER OF: K.A.M.A.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 5 October 2020 by Judge Kimberly Gasperson-Justice in District Court, Henderson County. This matter was calendared for argument in the Supreme Court on 6 December 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Susan F. Davis for petitioner-appellee Henderson County Department of Social Services.*

*Patricia M. Adcroft for appellee Guardian ad Litem.*

*David A. Perez for respondent-appellant father.*

NEWBY, Chief Justice.

¶ 1 Respondent-father appeals from the trial court's order terminating his parental rights to K.A.M.A. (Kenneth).[1] After careful review, we affirm.

¶ 2 Kenneth was born on 16 February 2018 in Henderson County, North Carolina. At birth, Kenneth tested positive for cocaine, benzodiazepines, and methamphetamines. Kenneth's mother admitted to drug use during her pregnancy

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

and tested positive at Kenneth's birth for benzodiazepines, cocaine, methamphetamines, and tetrahydrocannabinol (THC). The next day, the Henderson County Department of Social Services (DSS) received a report regarding Kenneth.[2] After Kenneth was released from the hospital, he lived with a safety resource family. On several dates following Kenneth's birth, respondent tested positive for cocaine and THC. DSS recommended respondent participate in substance abuse treatment, which respondent began but did not complete.

On 21 May 2018, Kenneth was placed with his maternal grandmother, who then supervised the parents' contact with Kenneth. Over Memorial Day weekend that year, the parents fought at the maternal grandmother's home. At one point during the altercation, respondent was holding Kenneth in his arms. Eventually, respondent pushed Kenneth's mother on the bed, poked her in the forehead aggressively, and grabbed her by the shirt. The maternal grandmother then asked respondent to leave the home.

DSS filed a juvenile petition on 8 June 2018 based on these events. The petition alleged Kenneth was a neglected juvenile due to his parents' issues with substance abuse, domestic violence, mental health, and housing instability. The parties then

---

[2] Though Kenneth was born in Henderson County, the Buncombe County Department of Social Services completed the initial family assessment and began in-home services due to a conflict of interest at Henderson County DSS. On 1 May 2018, after the conflict of interest was resolved, the case was transferred back to Henderson County DSS.

consented to a juvenile adjudication order. In that order, entered on 5 July 2018, the trial court determined that Kenneth was a neglected juvenile based on the allegations in the juvenile petition. The trial court granted custody of Kenneth to DSS, placed Kenneth with his maternal grandmother, and stated that DSS "shall explore [the maternal grandmother] as a visitation supervisor." On 16 August 2018, the trial court entered an adjudication order and a disposition order reaffirming the findings of fact and conclusions of law contained in the consent order. The trial court authorized Kenneth's continued placement with the maternal grandmother because "priority for release to such person [is] required." The trial court also ordered a minimum of one hour of weekly supervised visitation and set forth case plan requirements for the parents to achieve reunification.

¶ 5     By 9 October 2018, "conflict between the parents and [the maternal grandmother] necessitated [Kenneth]'s removal." DSS then placed Kenneth with foster parents. After the initial review and permanency-planning hearing on 1 November 2018, the trial court entered an order on 4 January 2019 detailing the parents' recent status. The trial court concluded the parents' progress was minimal and insufficient to remedy the conditions which led to Kenneth's removal. The trial court also considered Kenneth's release to a relative while DSS maintained custody. The trial court noted that it considered the maternal grandmother and respondent's relative as potential placements. Placement with respondent's relative, however, was

inappropriate due to the relative's criminal and child protective services history. Thus, the trial court found that it was "unaware of any such relative willing and able to take responsibility for the juvenile." Nonetheless, it ordered that "DSS shall explore for placement any other relatives provided by the parents." The trial court set the primary plan for Kenneth as reunification with the parents and the secondary plan as adoption.

¶ 6     The trial court held a second review and permanency-planning hearing on 27 June 2019. In an order entered on 23 July 2019, the trial court reiterated the parents' case plan requirements and detailed their statuses. The trial court again stated that it considered Kenneth's release to a relative and that it was "unaware of any such relative willing and able to take responsibility for the juvenile." The primary plan remained reunification with the parents and the secondary plan remained adoption.

¶ 7     The trial court held a review and permanency-planning hearing on 21 November 2019 and 12 December 2019. In an order entered on 15 January 2020, the trial court again reiterated the parents' case plan requirements and detailed their progress, which the trial court found to be inconsistent. The trial court noted that respondent did not comply with recommended substance abuse treatment, either missed drug screens or screened positive for drugs, missed scheduled visitations with Kenneth, remained unemployed, and did not have appropriate housing. Additionally, the trial court noted that a domestic violence incident occurred between Kenneth's

mother and respondent which resulted in charges against respondent for felony assault by strangulation, second-degree kidnapping, and misdemeanor assault on a female. The trial court again considered Kenneth's release to a relative but specifically "decline[d] to place [Kenneth] with the maternal grandmother." Upon the recommendations of DSS and the guardian ad litem, the trial court changed the primary permanent plan for Kenneth to termination of the parents' rights followed by adoption. The trial court changed the secondary plan to reunification.

¶ 8        On 18 February 2020, DSS filed a motion to terminate the parents' rights to Kenneth on the grounds of neglect, willful failure to make reasonable progress, and willful failure to pay a reasonable portion of the juvenile's cost of care. *See* N.C.G.S. § 7B-1111(a)(1)–(3) (2019). Before the motion was heard, Kenneth's maternal grandmother sent a letter to the trial court detailing her experience with DSS and asking the trial court to place Kenneth with her again. After several continuances, the motion was heard on 10 September 2020. On 5 October 2020, the trial court entered an order determining that grounds existed to terminate the parents' rights pursuant to N.C.G.S. § 7B-1111(a)(1)–(3). The trial court further concluded that it was in Kenneth's best interests that the parents' rights be terminated. Accordingly, the trial court terminated both parents' rights. Respondent appeals.[3]

---

[3] Kenneth's mother did not appeal from the trial court's order terminating her parental rights and thus is not a party to this appeal.

A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). Respondent does not challenge the grounds for termination adjudicated by the trial court under N.C.G.S. § 7B-1111(a). Rather, respondent argues the trial court erred by concluding that terminating his parental rights was in Kenneth's best interests.

"A trial court's determination concerning whether termination of parental rights would be in a juvenile's best interests 'is reviewed solely for abuse of discretion.'" *In re S.D.C.*, 373 N.C. 285, 290, 837 S.E.2d 854, 858 (2020) (quoting *In re A.U.D.*, 373 N.C. 3, 6, 832 S.E.2d 698, 700 (2019)). "Under this standard, we defer to the trial court's decision unless it is 'manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.'" *In re A.K.O.*, 375 N.C. 698, 701, 850 S.E.2d 891, 894 (2020) (quoting *In re Z.A.M.*, 374 N.C. 88, 100, 839 S.E.2d 792, 800 (2020)). When determining whether termination of a parent's rights is in a child's best interests,

> [t]he court may consider any evidence, including hearsay evidence as defined in [N.C.]G.S. [§] 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). This Court is "bound by all uncontested dispositional findings." *In re E.F.*, 375 N.C. 88, 91, 846 S.E.2d 630, 632 (2020) (citing *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019)).

¶ 11     During the dispositional stage, the trial court found the following:

1. The age of the juvenile is two (2) years.

2. As to the likelihood of the juvenile's adoption, the Court finds as follows: It is very likely that this juvenile will be adopted. The juvenile is healthy and is in a foster care setting where the foster family is wanting to adopt the juvenile.

3. This Court has previously adopted a permanency plan for this juvenile of adoption, and termination of the parental rights as ordered herein will aid in the accomplishment of this plan.

. . . .

5. As to the bond between the juvenile and [respondent], the Court finds as follows: Due to the lack of visits, no bond [exists] between [respondent] and the juvenile.

6. As to the relationship between the juvenile and

the prospective adoptive parent, the Court finds as follows: The bond between the juvenile and the prospective adoptive parents are like that of a loving child and the child's parents. The juvenile calls the prospective adoptive parents mama and papa.

¶ 12    Respondent does not challenge these dispositional findings. Thus, they are binding on appeal. *In re A.K.O.*, 375 N.C. at 702, 850 S.E.2d at 894 ("Dispositional findings not challenged by respondents are binding on appeal.").

¶ 13    Nonetheless, respondent argues the trial court erred by failing to make required findings pursuant to N.C.G.S. § 7B-1110(a). Respondent contends the maternal grandmother's letter addressing "a violation of a court order and removal of the child from [her care] due to conflict with the parents" created a conflict in the evidence. Thus, respondent contends the trial court was required to make written findings regarding whether Kenneth's maternal grandmother was an appropriate relative placement.

¶ 14    "Although the trial court must 'consider' each of the statutory factors, we have construed subsection (a) [of N.C.G.S. § 7B-1110] to require written findings only as to those factors for which there is conflicting evidence." *In re E.F.*, 375 N.C. at 91, 846 S.E.2d at 633 (citation omitted) (citing *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 424 (2019)).

Although the trial court is not expressly directed to consider the availability of a relative placement in the course of deciding a termination of parental rights proceeding, it may treat the availability of a relative

placement as a 'relevant consideration' in determining whether termination of a parent's parental rights is in the child's best interests, with the extent to which it is appropriate to do so in any particular proceeding being dependent upon the extent to which the record contains evidence tending to show whether such a relative placement is, in fact, available.

*In re S.D.C.*, 373 N.C. at 290, 837 S.E.2d at 858 (citation omitted). When a party does not introduce evidence regarding a potential relative placement at the disposition stage, the trial court is not required to consider the relative placement. *See In re E.F.*, 375 N.C. at 94, 846 S.E.2d at 634 ("Respondent, however, made no reference to [the relative] or any other alternative placement for the children at the disposition stage . . . . Absent additional evidence regarding [the relative]'s willingness or ability to provide permanence for respondent's children, the trial court cannot be said to have erred . . . .").

¶ 15    Here there was no conflict in the evidence before the trial court that would require findings of fact regarding whether Kenneth's maternal grandmother was an appropriate relative placement. The only testimony before the trial court during the adjudication and disposition stages was by Susan Beasley, the DSS social worker assigned to Kenneth's case. Ms. Beasley did not mention a relative placement. Further, the maternal grandmother did mail a letter to the trial court expressing her desire to have Kenneth placed with her and this letter was included in the record. She did not, however, attend or testify at the termination of parental rights hearing,

nor was her letter discussed at the hearing. Moreover, respondent's attorney did not discuss a relative placement during the termination hearing. Rather, the evidence showed the trial court previously considered and rejected the maternal grandmother as a relative placement. Kenneth was removed from the maternal grandmother's care because "conflict between the parents and [the maternal grandmother] necessitated [Kenneth]'s removal." Then in the final review order—which the trial court incorporated into its termination order—the trial court "decline[d] to place [Kenneth] with the maternal grandmother."

¶ 16        Thus, there was no conflict in the evidence regarding whether Kenneth's maternal grandmother was an appropriate relative placement. Rather, the evidence shows the trial court had previously considered this option and declined to place Kenneth with her. Because there was no conflict in the evidence, the trial court was not required to make findings of fact as to this issue. Moreover, the trial court's binding dispositional findings support its conclusion that termination was in Kenneth's best interests. These findings show that Kenneth was placed with a loving foster family who wanted to adopt him. Due to respondent's failure to visit, Kenneth had no bond with respondent. Additionally, the trial court found that terminating respondent's parental rights would aid in the accomplishment of Kenneth's permanent plan of adoption by his foster parents, whom he called "mama" and "papa." Therefore, the trial court did not abuse its discretion in determining that termination

of respondent's parental rights was in Kenneth's best interests. Thus, we affirm the trial court's order.

AFFIRMED.